UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COLUMBIA INSURANCE CO., et al.,

Plaintiffs,

v.

SIMPSON STRONG-TIE COMPANY INC.,

Defendant.

Case No. 19-cv-04683-TSH

**ORDER DENYING DEFENDANT'S MOTION IN LIMINE; GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION IN LIMINE; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT (PUBLIC VERSION OF ECF NO. 151)**

Re: Dkt. Nos. 84, 86, 98

## I.    INTRODUCTION

Pending before the Court is a motion in limine to exclude the expert opinion and testimony of Eugene Lhymn brought by Defendant Simpson Strong-Tie Company Inc. ("Simpson") (ECF No. 98); a motion in limine to exclude the expert testimony of Andrew Hirshfeld, Charles Cypher and Long Nguyen brought by Plaintiffs Columbia Insurance Co. ("Columbia") and MiTek, Inc. (ECF No. 84); and Plaintiffs' partial motion for summary judgment to enforce post-grant review ("PGR") estoppel pursuant to 35 U.S.C. § 325(e)(2).  ECF No. 86.[1]  The Court finds these motions suitable for disposition without oral argument.  *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court **DENIES** Defendant's motion in limine, **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion in limine, and **GRANTS IN PART and DENIES IN**

---

[1]  For precision's sake, citations herein are to the unredacted versions of Defendant's motion in limine, Defendant's reply in support of its motion in limine, Defendant's opposition to Plaintiffs' motion for partial summary judgment, and Defendant's opposition to Plaintiffs' motion in limine (ECF Nos. 97-4; 117-2; 109-6; and 99-6, respectively) and the parties' declarations and exhibits in support of their respective motions, some of which were filed under seal.  Most sections of these documents cited within this order can be found in redacted versions the parties filed on the public docket.  *See* ECF Nos. 98 (Defendant's redacted motion in limine); 118 (Defendant's reply in support of its motion in limine); 110 (Defendant's opposition to Plaintiffs' motion for summary judgment); 101 (Defendant's opposition to Plaintiffs' motion in limine).

**PART** Plaintiffs' partial motion for summary judgment.[2]

## A. BACKGROUND

MiTek is a Missouri corporation that manufactures and sells hangers used in building construction and structures for connecting structural components to wall framing, such as trusses and joists. Am. Compl. ¶¶ 2, 17, ECF No. 61. Simpson is a California corporation that "has made, used, sold, or offered for sale fire wall hangers that are adapted for connecting a trusses and joist to walls." *Id.* ¶¶ 3, 25. Columbia is the owner of U.S. Patent No. 10,316,510 ("the '510 Patent"), entitled "Hanger for Fire Separation Wall." *Id.* ¶¶ 7, 15. MiTek is the exclusive licensee of the '510 Patent. *Id.* ¶ 16.

The '510 Patent issued from U.S. Patent Application No. 16/225,517 ("the '517 Application"). *Id.* ¶ 8. The '510 Patent pertains to a design improvement from traditional fire separation wall hangers. *Id.* ¶ 23. Fire separation walls are often required in structures such as multifamily housing to prevent fires from spreading between adjoining units. *Id.* ¶ 18. Fire separation walls typically use fire retardant sheathing to improve the walls' resistance to fire. *Id.* ¶ 19. Trusses and joists cannot be directly hung from this sheathing and must be directly attached to and hung from the wall framing. *Id.* ¶ 20. Traditional hangers for connecting trusses and joists to wall framing require cutouts in fire retardant sheathing to accommodate the entire cross-sections of the trusses or joists. *Id.* ¶ 21. These cutouts create a large discontinuity in the sheathing, decreasing the walls' fire resistance. *Id.* ¶ 22. The '510 Patent is a hanger for connecting trusses and joists to wall framing that seeks to minimize interruptions in the sheathing. *Id.* ¶¶ 23–24.

The three main components of the '510 hanger are: (1) a channel-shaped portion configured to receive the structural component (i.e., the truss or joist), (2) an extension portion extending from the channel shaped portion and configured to extend through the sheathing, and (3) a connection portion configured to attach to the top surface of a wall structure. *Id.* ¶ 23. The extension portion of the hanger spaces the channel-shaped portion and the connection portion apart by a distance large enough to permit the fire retardant sheathing to be received between the

---

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 9; 17.

United States District Court
Northern District of California

1    channel-shaped portion and the connection portion.  *Id.* ¶ 24.

2        Since 2019, Simpson has made and sold within the United States a line of three fire wall

3    hangers, the DGF/DGHF/DGBF Fire Wall Hangers.  *Id.* ¶¶ 25–26.  In a May 28, 2019 letter,

4    Columbia's counsel notified Simpson that the '517 application had been allowed and that the

5    Simpson Hangers fell within the scope of allowed patent claims.  *Id.* ¶ 37.

6        Plaintiffs filed this case in this Court on August 12, 2019, alleging that the Simpson

7    Hangers infringed several claims of the '510 Patent.  ECF No. 1.  On September 5, 2019,

8    Defendant filed a petition for Post-Grant Review ("PGR") with the Patent Trial and Appeal Board

9    ("PTAB") of the United States Patent and Trademark Office ("USPTO"), challenging the validity

10   of the asserted claims of the '510 Patent.  *See* ECF No. 33 (Joint Stipulation to Stay Case Pending

11   Resolution of PGR).  On October 23, 2019, the Court stayed this case pending the resolution of

12   PGR.  ECF No. 34.

13       On March 12, 2020, the PTAB granted institution of PGR of the '510 Patent.  ECF No. 38.

14   On March 11, 2021, the PTAB issued its PGR decision.  *Id.*  In its decision, the PTAB found

15   claims 1–20 of the '510 Patent invalid, but granted a motion to amend as to a substitute claim –

16   claim 40 – which PTAB found to be patentable.  *Id.*; Am. Compl. ¶¶ 11, 43, 47.  Plaintiffs and

17   Defendant both appealed the decision to the Court of Appeals for the Federal Circuit, challenging

18   certain aspects of PTAB's final written decision.  ECF No. 47.  This case remained stayed in the

19   interim.  On March 31, 2022, the Federal Circuit affirmed the PGR decision.  ECF No. 48.  On

20   November 3, 2023, the USPTO issued a Post Grant Review Certificate incorporating claim 40 into

21   the '510 Patent.  Eidson MSJ Decl. ¶ 5, ECF No. 87 & Ex. D, ECF No. 88-3.

22       Plaintiffs filed the operative Amended Complaint on December 13, 2023, alleging

23   infringement of claim 40 of the '510 Patent.  Am. Compl. ¶¶ 25–35, 53–61.  Claim 40 of the '510

24   Patent reads:

25           A hanger for connecting a structural component to a wall adapted to
26           have drywall mounted thereon, the hanger comprising:

             a channel-shaped portion configured to receive the structural
27           component;

28           an extension portion extending from the channel-shaped portion and

United States District Court
Northern District of California

configured to extend through the drywall; and

a connection portion including a top flange configured for attachment to a top surface of a top plate of the wall and a back flange extending from an edge of the top flange, the back flange having a front surface lying in a back flange plane, the extension portion spacing the channel-shaped portion from the back flange plane by a distance sized large enough to permit the drywall to be received between the channel-shaped portion and the back flange plane;

wherein the extension portion includes an extension flange extending from the back flange of the connection portion to the channel-shaped portion.

Am. Compl. ¶ 30.

On January 3, 2024, Defendant filed an answer to the Amended Complaint and a counterclaim seeking a declaratory judgment that the '510 Patent is invalid.  ECF No. 64.  In its counterclaim, Defendant requests, *inter alia*, that the Court grant Defendant a declaration that claim 40 of the '510 Patent is invalid, an order enjoining Plaintiffs from charging or asserting infringement of any claim of the '510 Patent against Simpson or anyone in privity with Simpson, and dismissal of Plaintiff's Amended Complaint.  *Id.*, Requests for Relief ¶¶ 1–3.

On April 1, 2024, Simpson served its invalidity contentions pursuant to Patent Local Rules 3-3 and 3-4, in which Simpson alleged that five prior art references invalidated claim 40 of the '510 Patent.  *See* Decl. of B. Scott Eidson in support of MSJ ¶ 6, ECF No. 87 & Ex. E to Eidson Decl., ECF No. 88-4 (Def.'s Invalidity Contentions).  These references included the Yamaguchi, Cullen, Adams, Chapin and Bundy references.  Simpson contended that these references anticipated and rendered obvious claim 40 of the '510 Patent.  Def.'s Invalidity Contentions at 3–4.  Simpson did not assert any other grounds for invalidity of claim 40 of the '510 Patent.  *Id.* at 5.

On August 1, 2024, Plaintiffs served on Defendant the expert report of Eugene Lhymn, a former patent examiner and current CEO of a patent search firm who opines that the disputed references would have been found by an ordinarily skilled searcher's reasonably diligent search.  Decl. of Joseph V. Mauch ¶ 6, ECF No. 98-1; Eidson MSJ Decl., & Ex. CC, ECF No. 89-1 (Lhymn Report).  That same day, Simpson served on Plaintiffs the expert report of Andrew Hirshfeld.  Eidson MIL Decl., ECF No. 85-1 & Ex. A, ECF No. 85-3.  On September 3, 2024, the parties served the rebuttal expert reports of Mr. Lhymn and Mr. Hirshfeld.  Eidson MSJ Decl.

¶ 14, ECF No. 87 & Ex. Y, ECF No. 88-14 (Lhymn Rebuttal); Eidson MSJ Decl. ¶ 25, ECF No. 87 & Ex. JJ, ECF No. 93-14 (Hirshfeld Rebuttal).  Mr. Lhymn submitted a sur-rebuttal report on October 3, 2024.  Mauch Decl. ¶ 6; Eidson MSJ Decl. ¶ 19 & Ex. DD, ECF No. 89-2.

On October 28, 2024, Plaintiffs brought their motion in limine to exclude the expert testimony of Andrew Hirshfeld, Charles Cypher and Long Nguyen.  ECF No. 84.  That same day, Plaintiffs filed the instant motion for partial summary judgment, seeking summary judgment on Defendant's counterclaim that U.S. Patent No. 10,316,510 is invalid.  ECF No. 86 (Mot. for Summ. J.).  In their motion for summary judgment, Plaintiffs argue that Simpson is estopped from asserting that claim 40 of the '510 Patent is invalid.  MSJ at i, 1-2, ECF No. 86.  Plaintiffs offered the Lhymn report in support of their motion for summary judgment.  On November 4, 2024, Simpson filed a motion in limine to exclude Mr. Lhymn's expert testimony and opinion.  ECF No. 98.

Simpson raises the Cullen, Chapin and Yamaguchi references as prior art invalidating the asserted claims of the '510 Patent.  Cullen is a U.K. patent published in 2009.  U.K. Patent App. Pub. No. 2451853A.  Chapin is a U.S. patent issued in 1931.  U.S. Patent 1,792,815.  Yamaguchi is a Japanese design patent issued in 2004.  Japanese Design Patent No. D1213894.  MiTek and Columbia have moved for partial summary judgment on the basis of post-PGR § 325(e)(2) estoppel, arguing that Simpson reasonably could have raised all three references during PGR.

## II.    LEGAL STANDARD FOR ESTOPPEL

35 U.S.C. § 325(e) bars the petitioner in a post-grant review from asserting invalidity as a defense to a civil action for patent infringement "on any ground that the petitioner raised or reasonably could have raised during that post-grant review."  35 U.S.C. § 325(e)(2).  Case law applying the estoppel provisions of 35 U.S.C. § 315(e), which governs Inter Partes Review ("IPR") proceedings, is instructive, as "the PGR and IPR estoppel provisions are substantively identical."  *GREE, Inc. v. Supercell Oy*, No. 19-cv-00071-JRG-RSP, 2019 WL 5677511, at *2 (E.D. Tex. Oct. 30, 2019).  *See also Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1053 (Fed. Cir. 2017) (noting Federal Circuit's holdings "with respect to IPRs apply to the PGR statutes and regulations as well since the PGR provisions contain identical language.")

United States District Court
Northern District of California

"[T]he burden of proving, by a preponderance of the evidence, that a skilled searcher exercising reasonable diligence would have identified an invalidity ground rests on the patent holder, as the party asserting and seeking to benefit from the affirmative defense of . . . estoppel." *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1299 (Fed. Cir. 2023) ("*Ironburg I*") (in the context of IPR estoppel).

"[W]hether a skilled, diligent search reasonably should have uncovered a reference is a question of fact." *Palomar Techs., Inc. v. MRSI Sys., LLC*, 373 F. Supp. 3d 322, 331-32 (D. Mass. 2019) (finding fact issues precluded summary judgment as to whether a skilled, diligent search reasonably should have uncovered references where the party asserting estoppel presented attorney arguments but "no expert affidavits or factual evidence" as to the ease with which a skilled searcher conducting a diligent search would have found the references); *see also GREE*, 2019 WL 5677511, at *5 (holding that unless otherwise resolved by the parties, "a motion for partial summary judgment will be needed to accomplish a pretrial determination of" PGR estoppel); *Cellwitch Inc. v. Tile, Inc.*, No. 19-cv-01315-JSW, 2023 WL 8813524, at *2 (N.D. Cal. Dec. 20, 2023) (collecting cases deciding IPR estoppel on motion for summary judgment). "One way the proponent of estoppel can show what a skilled searcher conducting a diligent search could have been expected to discover is to '(1) to identify the search string and search source that would identify the allegedly unavailable prior art and (2) present evidence, likely expert testimony, why such a criterion would be part of a skilled searcher's diligent search.'" *Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-cv-00410-EMC, 2019 WL 7589209, at *8 (N.D. Cal. Dec. 30, 2019) (quoting *Clearlamp, LLC v. LKQ Corp.*, No. 12-cv-2533, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016)). "The inquiry into what a skilled and diligent searcher would reasonably have discovered is ultimately concerned with what the searcher of ordinary skill *would* find through reasonable diligence and not what an actual researcher in fact *did* find through whatever level of diligence she exercised." *Ironburg I*, 64 F.4th at 1299 (emphasis in original).

### III.   MOTIONS IN LIMINE

#### A.   Legal Standard

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence

United States District Court
Northern District of California

1   in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  Like other

2   pretrial motions, motions in limine are "useful tools to resolve issues which would otherwise

3   clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

4   Accordingly, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely

5   within the discretion of the district court." *Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n.4

6   (1984) (explaining that a court may rule in limine "pursuant to the district court's inherent

7   authority to manage the course of trials").  However, "[a] motion in limine is not the proper

8   vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such

9   motions has passed." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013),

10  *aff'd*, 574 U.S. 418 (2015).

11      In many instances, rulings "should be deferred until trial, so that questions of foundation,

12  relevancy, and potential prejudice may be resolved in proper context." *United States v. Pacific*

13  *Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016).  For example, to exclude evidence

14  on a motion in limine, "the evidence must be inadmissible on all potential grounds." *McConnell v.*

15  *Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014).  Thus, denial of a motion in

16  limine to exclude certain evidence does not mean that all evidence contemplated by the motion

17  will be admitted, only that the court is unable to make a comprehensive ruling in advance of trial.

18  *Id.*  Moreover, even if a district court does rule in limine, the court may "change its ruling at trial

19  because testimony may bring facts to the district court's attention that it did not anticipate at the

20  time of its initial ruling." *City of Pomona*, 866 F.3d at 1070; *see also Ohler v. United States*, 529

21  U.S. 753, 758 n.3 (2000) ("[I]n limine rulings are not binding on the trial judge, and the judge may

22  always change his mind during the course of a trial.").

23      Federal Rule of Civil Procedure 26(a)(2)(A) requires parties to disclose the identity of any

24  expert witness they may use at trial to present opinion testimony.  Fed. R. Civ. P. 26(a)(2)(A).

25  "[T]his disclosure must be accompanied by a written report—prepared and signed by the

26  witness—if the witness is one retained or specially employed to provide expert testimony in the

27  case . . ."  Fed. R. Civ. P. 26(a)(2)(B).  A party also must disclose as rebuttal experts those experts

28  whose testimony will be "intended solely to contradict or rebut evidence on the same subject

matter identified by" an initial expert witness.  Fed. R. Civ. P. 26(a)(2)(D)(ii).  "Because rebuttal experts and reports are designated as such, their testimony must contradict or rebut evidence or theories of the opposing expert witness."  *Abdo v. Fitzsimmons*, No. 17-cv-00851-TSH, 2020 WL 4051299, at *2 (N.D. Cal. July 20, 2020) (citations omitted).  "[S]upplemental or 'rebuttal' experts, therefore, 'cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.'"  *Bakst v. Community Mem'l Health Sys., Inc.*, No. 09-cv-08241-MMM-FFM, 2011 WL 13214315, at *34 (C.D. Cal. Mar. 7, 2011) (quoting *International Business Machines Corp. v. Fasco Indus., Inc.*, No. 93-cv-20326-RPA, 1995 WL 115421, *3 (N.D. Cal. Mar. 15, 1995)); *see also Clear-View Techs., Inc. v. Rasnick*, No. 13-cv-02744-BLF, 2015 WL 3509384, at *4 (N.D. Cal. June 3, 2015) ("Permitting [parties] to backdoor [affirmative] expert testimony under the guise of 'rebuttal' testimony would render Rule 26's limits generally meaningless . . .").

Rule 37, in turn, "gives teeth to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed."  *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (internal quotation marks and citation omitted).  "The Advisory Committee Notes describe it as a 'self-executing,' 'automatic' sanction to 'provide[ ] a strong inducement for disclosure of material.'"  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Fed. R. Civ. P. 37 advisory committee's note (1993) (alteration in original).  Rule 37(c)(1) thus requires exclusion unless the party's "failure to disclose the required information is substantially justified or harmless."  *Id.* (citation omitted).  "[T]he burden is on the party facing sanctions to prove harmlessness."  *Id.* at 1107.

A qualified expert may testify where "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The Court's gatekeeping role under *Daubert* requires inquiry into the reliability of Mr. Lhymn's opinion.  *Daubert v. Merrell*

8

*Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995); *see Grodzitsky v. American Honda Motor Co., Inc.*, 957 F.3d 979, 984 (9th Cir. 2020) ("Under *Daubert*, 'the district court judge must ensure that all admitted expert testimony is both relevant and reliable.'") (internal citation omitted).  The Court "must assure that the methods are adequately explained," *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002), and the Court is "vested with 'broad latitude' to 'decide *how* to test an expert's reliability' and '*whether or not* an expert's relevant testimony is reliable.'"  *Murray v. Southern Route Maritime SA*, 870 F.3d 915, 923 (9th Cir. 2017) (internal citation omitted).

**B.    Discussion**

**1.    Simpson's Motion in Limine to Exclude Expert Opinion and Testimony of Eugene Lhymn**

Defendant moves to exclude the declaration and testimony of Plaintiffs' expert witness, Eugene Lhymn, under Rule 702 and *Daubert*.  ECF No. 98.  Defendant argues that Mr. Lhymn's opinion is unreliable and irrelevant because Mr. Lhymn had knowledge of the prior art references that Simpson alleges invalidate the '510 Patent at the time of his search.

Mr. Lhymn is the CEO and founder of a patent search firm and of an A.I. patent search startup.  Lhymn Rep. ¶¶ 3–4.  Mr. Lhymn was a patent examiner at the United States Patent and Trademark Office ("USPTO") from 2004 to 2005, and subsequently worked as a senior patent analyst at Cardinal IP, where he performed prior art invalidity searches, freedom-to-operate ("FTO") searches and patentability searches.  *Id.* ¶¶ 7–8.  Simpson does not challenge Mr. Lhymn's qualification as an expert.  Def.'s Mot. in Limine at 8, ECF No. 97-4.

In his expert report, Mr. Lhymn opined that the Chapin and Cullen patents and the Yamaguchi industrial design "would have been found by a searcher of ordinary skill through reasonable diligence in the relevant timeframe."  Lhymn Rep. ¶ 16.  Simpson argues that Mr. Lhymn's opinion that the three references on which Simpson relies could have been discovered by a skilled searcher conducting a diligent search are premised on unreliable methodology and irrelevant to the issue of whether Simpson could have raised the three references in the PGR period.

United States District Court
Northern District of California

1    As a preliminary matter, Mr. Lhymn's opinion and identification of search strings that

2    locate the Cullen, Chapin and Yamaguchi references is relevant to the question of whether a

3    skilled searcher conducting a diligent search could have identified those references in the PGR

4    period.  *See* Fed. R. Evid. 401.

5    Defendant argues that Mr. Lhymn's opinion is unreliable because Mr. Lhymn had

6    knowledge of the prior art references that Simpson alleges invalidate the '510 Patent at the time of

7    his search.  Defendant argues that "Mr. Lhymn's proffered expert opinion that the References

8    would have been found by a skilled searcher performing a reasonably diligent search should not be

9    admitted into evidence because Plaintiffs cannot demonstrate to the Court that it is more likely

10    than not that Mr. Lhymn's opinion, which is the result of 'hindsight bias' resulting from Mr.

11    Lhymn's pre-existing knowledge of the References that he constructed searches to find, is the

12    product of reliable principles and methods and logically advances the Court's determination of

13    what a skilled searcher conducting a diligent search reasonably would have been expected to

14    discover."  Def.'s Mot. in Limine at 8.  Plaintiffs respond that "[n]one of the cases relied upon by

15    Simpson hold that an expert's prior knowledge of the asserted references automatically renders the

16    expert's opinions unreliable and inadmissible."  Pls.' Opp'n to Mot. in Limine at 1, ECF No. 107.

17    Mr. Lhymn attests to finding all three disputed prior art references using methods available

18    on or before September 5, 2019, the date Simpson filed its petition for PGR.  Lhymn Rep. ¶¶ 26,

19    53, 90, 99.  Mr. Lhymn explains that an ordinarily skilled searcher would have searched for terms

20    that appear in the claims and specification of the '510 Patent to locate prior art related to the

21    subject matter of the claims of the '510 Patent.  *Id.* ¶ 47.  Mr. Lhymn attests that a skilled searcher

22    would accordingly have generated search strings to run a Boolean title, abstract and claims

23    ("TAC") search for "hanger*" and "joist*".  *Id.*

24    All of Simpson's arguments in favor of excluding Mr. Lhymn's opinion are based on

25    hindsight bias.  Simpson acknowledges that it has cited no precedents in which a court excluded

26    an expert opinion on that basis.  Def.'s Mot. in Limine at 9 ("While those courts faced with

27    'skilled searcher' expert opinions where the expert had prior knowledge of the reference did not

28    exclude the opinion . . .").  The Court finds that that the question of hindsight bias goes to the

10

1   credibility of Mr. Lhymn's opinion, and thus how much weight it should be given, rather than to

2   the reliability of the methods Mr. Lhymn used to conduct invalidity searches.  *See Palomar*

3   *Techs., Inc. v. MRSI Systems, LLC*, No. 18-cv-10236-FDS, 2020 WL 2115625, *15 (D. Mass. May

4   4, 2020) ("An analysis tainted by hindsight sheds little light on that inquiry.  For that reason, the

5   Court will not give substantial weight to Kunin's opinion as to what an objectively reasonable

6   search would have been.").  Accordingly, the Court **DENIES** Defendant's motion in limine to

7   exclude Mr. Lhymn's opinion.

8          2.      **Columbia's Motion in Limine to Exclude Expert Opinion and Testimony of
                   Andrew Hirshfeld and to Exclude Declarations of Charles Cypher and Long**
9                  **Nguyen**

10                 a.      **Opinion and Testimony of Andrew Hirshfeld**

11         Plaintiffs ask the Court to exclude Mr. Hirshfeld's opinions regarding the scope of

12  invalidity searches, what a diligent search would uncover, and the relevant qualifications of a

13  skilled searcher; Mr. Hirshfeld's opinions that an ordinarily skilled searcher conducting a diligent

14  search of the '510 Patent would not reasonably be expected to discover a reference and related

15  opinions that searches did not identify a reference, and Mr. Hirshfeld's opinions regarding the

16  qualifications and experience of invalidity searches performed by others.

17                 i.      **Mr. Hirshfeld's Opposition Declaration**

18         In support of Simpson's opposition to Plaintiffs' Daubert motion, Mr. Hirshfeld submits a

19  lengthy declaration "to further explain [his] background and experience in the particular context of

20  prior art searching."  Hirshfeld Opp. Decl., ECF No. 103 ¶¶ 3, 8–24.  Mr. Hirshfeld's opposition

21  declaration includes new opinions regarding the nature and purpose of patentability and invalidity

22  searches (*id.* ¶ 9), additional information regarding the basis and reasons for those opinions, Mr.

23  Hirshfeld's qualifications to express opinions on invalidity searching, and facts Mr. Hirshfeld

24  considered in forming his opinions.  Mr. Hirshfeld's opposition declaration thus constitutes an

25  expert report.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i), (ii), (iv).  Mr. Hirshfeld's declaration in

26  opposition was filed November 12, 2024.  *See generally* Hirshfeld Opp'n Decl. at 8.  Expert

27  discovery on PGR estoppel closed October 21, 2024.  ECF No. 81 at 3 (Stipulated Amended Case

28  Management Order).  Accordingly, the Court finds Mr. Hirshfeld's opposition declaration

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    constitutes an untimely expert report and does not consider the declaration in deciding Plaintiffs'

2    motion.

3                    ii.    **Mr. Hirshfeld's opinions regarding the scope of invalidity**
                            **searches, what a diligent search would uncover and the relevant**
4                           **qualifications of a skilled searcher.**

5           Plaintiffs ask the Court to exclude Mr. Hirshfeld's opinions regarding the scope of

6    invalidity searches, what a diligent search would uncover, and the relevant qualifications of a

7    skilled searcher because he is not qualified to opine on those issues.  Plaintiffs further contend that

8    Mr. Hirshfeld's opinions regarding the scope of invalidity searches and what a diligent search

9    would uncover should be excluded as unreliable because they lack a sufficient basis.

10          Mr. Hirshfeld is an attorney who worked for the U.S. Patent and Trademark Office

11   (USPTO) for nearly eighteen years, including as a patent examiner from 1994 to 2001, USPTO

12   Chief of Staff from 2009 to 2011, Deputy Commissioner for Patent Examination Policy from 2011

13   to 2015, and Commissioner for Patents from 2015 to 2021.  Mr. Hirshfeld also performed the

14   functions of the Under Secretary of Commerce for Intellectual Property and Director of the

15   USPTO for over a year at the start of the 2021 U.S. Presidential transition.  Mr. Hirshfeld attests

16   that he has "direct experience in performing and reviewing the work of patent examiners,

17   including prior art searches."  Hirshfeld Rep. ¶ 12.

18          The Court finds Simpson has established Mr. Hirshfeld's qualifications on general patent

19   searching methods and techniques, including patent classification systems and definitions.

20   However, the Court finds Simpson has not established that Mr. Hirshfeld is an expert in the field

21   of invalidity searching specifically.  Neither Mr. Hirshfeld's opening nor rebuttal report indicates

22   that he has conducted invalidity searches, and Mr. Hirshfeld confirmed in his deposition that

23   during his time at the patent office, he "would not have been doing invalidity searches."  Hirshfeld

24   Dep. 1 at 26:6-14, ECF No. 103-3.

25          In his rebuttal to Mr. Lhymn's affirmative expert report, Mr. Hirshfeld implies that his

26   experience conducting patentability searches is applicable to assessing the diligence of a validity

27   search, opining:

28                  The goal of a patent examiner's patentability search is to determine

> whether a patent application is patentable over prior art, whereas the goal of a validity search is to determine whether claims of an issued patent are valid over the prior art. In my opinion, proper search techniques in a patentability search are informative of proper techniques in a validity search.

Hirshfeld Rebuttal Rep. ¶ 13 n.2, ECF No. 85-4. However, Mr. Hirshfeld provides no basis for this opinion. In his deposition, Mr. Hirshfeld testified that he did not know whether his approach would vary conducting a patentability search as compared to an invalidity search. Hirshfeld Dep. 1 at 26:15-23. Simpson thus fails to establish that Mr. Hirshfeld's opinions regarding the scope of an invalidity search and what a diligent search would uncover are the product of reliable methods applicable to invalidity searching. *See* Fed. R. Evid. 702. Accordingly, the Court finds Simpson thus fails to establish that Mr. Hirshfeld is qualified to render an opinion on the scope of invalidity searches specifically or on what a diligent invalidity search would uncover.

The Court finds, however, that Mr. Hirshfeld's lack of qualification as an expert on invalidity searching does not automatically render his opinions regarding the qualifications of a skilled invalidity searcher unreliable. Mr. Hirshfeld's decades of experience working at USPTO, including conducting patentability searches as a patent examiner, and in several supervisory roles at USPTO qualify him to opine on the qualifications of a skilled searcher. Accordingly, the Court **GRANTS** Plaintiffs' motion to exclude Mr. Hirshfeld's opinions regarding the scope of invalidity searches and what a diligent invalidity search would uncover. The Court **DENIES** Plaintiffs' motion to exclude Mr. Hirshfeld's opinions regarding the qualifications of a skilled searcher.

> iii.  **The extent to which Mr. Hirshfeld's opinions that an ordinarily skilled searcher conducting a diligent search of the '510 Patent would not reasonably be expected to discover a reference and related opinions that searches did not identify a reference, are contrary to the law.**

Plaintiffs assert that Mr. Hirshfeld's opinions that an ordinarily skilled searcher conducting a diligent search of the '510 Patent would not reasonably be expected to discover a reference and related opinions that searches did not identify a reference should be excluded as not relevant because they are contrary to law. The Court finds these opinions fall within the scope of Mr. Hirshfeld's opinions regarding what a diligent invalidity search would uncover, which the Court

United States District Court
Northern District of California

1    strikes.  Accordingly, the Court need not consider whether such opinions are contrary to law.

2               **iv.      Mr. Hirshfeld's opinions regarding the scope of Simpson's prior**
                **art searches and qualifications and experience of searchers.**
3

4          Plaintiffs assert that Mr. Hirshfeld's opinions regarding the scope of and diligence

5    reflected in certain of Simpson's prior art searches should be excluded because they lack an

6    adequate basis.  The Court finds these opinions are necessarily informed by Mr. Hirshfeld's

7    opinions regarding the scope of invalidity searches and what a diligent invalidity search would

8    uncover, which the Court strikes.  Accordingly, the Court need not consider whether such opinions

9    have an adequate basis.

10         The Court finds Mr. Hirshfeld's description of Simpson's pre-PGR prior art searches fails

11   to provide an adequate basis for Mr. Hirshfeld's opinions regarding the diligence of the searches

12   or the experience and qualifications of the foreign associates or engineers who performed those

13   searches for Simpson.  In his report, Mr. Hirshfeld discusses the patent searching Simpson

14   conducted before the filing of the PGR on September 5, 2019.  Hirshfeld Rep. ¶¶ 69–83.

15   However, Mr. Hirshfeld provides only a high-level explanation of Simpson's pre-PGR prior art

16   searches.  Mr. Hirshfeld's report includes instructions Simpson provided to Cardinal IP to conduct

17   its invalidity search, Cardinal IP's general search strategies, including the types of searches

18   performed, types of databases searches, and one example of a CPC classification in which

19   searchers conducted "focused searching. *Id.* ¶¶  70, 71.  Mr. Hirshfeld also provides high level

20   summaries of the prior art searches performed at Simpson's direction by Charles Cypher,

21   Simpson's long-time patent attorney, including the number of hours Mr. Cypher logged and

22   references Mr. Cypher identified (*id.* ¶¶ 73–80), as well as prior art searches conducted by foreign

23   associates at Mr. Cypher's direction and prior art searches conducted by Simpson engineers.  *Id.*

24   ¶¶ 81–82, 83.

25         Mr. Hirshfeld opines that the pre-PGR Cardinal IP search was "a thorough and detailed

26   prior art search for the subject matter of the '510 Patent[,]" that the additional searching performed

27   and directed by Mr. Cypher "was thorough and detailed prior art searching conducted by

28   accomplished and significantly experienced searchers" and that the totality of Simpson's pre-PGR

United States District Court
Northern District of California

14

search was "together thorough and detailed prior art searching conducted by accomplished and significantly experienced searchers." *Id.* ¶ 3.  However, Mr. Hirshfeld does not identify any of the specific databases that Cardinal IP, Mr. Cypher, or any other searcher used to carry out Simpson's pre-PGR search; does not list or otherwise provide search terms they used; and does not identify the number of results yielded from any of the searches.  The Court thus excludes Mr. Hirshfeld's opinions regarding the scope and diligence of these searches.  *See Innovative Memory Sys., Inc. v. Micron Tech., Inc.*, No. 14-cv-1480-RGA, 2022 WL 4548644, at *4 (D. Del. Sept. 29, 2022) (finding defendant "conspicuously does not provide sufficient details, such as an explanation of the search process, search terms, or hit counts from the first three searches, to enable the Court to assess whether those searches were diligent"); *Ironburg Inventions Ltd. v. Valve Corp.*, No. 17-cv-1182-TSZ, 2024 WL 2091177, at *8 (W.D. Wash. May 3, 2024) ("*Ironburg II*") (considering whether specific searches proved or tended to prove that a skilled searcher conducting a diligent search could have been expected to discover reference).

> **v.    Mr. Hirshfeld's opinions regarding the scope of Simpson's prior art searches and qualifications and experience of searchers.**

Plaintiffs further assert that Mr. Hirshfeld's opinions regarding the qualifications and experience of searchers should be excluded as not relevant because they consist of unsupported speculation and subjective belief.

Mr. Hirshfeld does not provide any analysis of the qualifications of any of the foreign associates or engineers who performed searches for Simpson.  Mr. Hirshfeld's opinion that the foreign associates engaged by Mr. Cypher were "accomplished and significantly experienced" is based on "the fact that Mr. Cypher considers the foreign associates that he engaged and the outside searchers engaged by some of those foreign associates[] to be accomplished patent attorneys with significant experience performing and/or directing prior art searches."  Hirshfeld Rep. ¶ 115.  Mr. Hirshfeld testified in his deposition that he "believe[d]" he had background information on the foreign associates who did the searching and "took that into consideration."  Hirshfeld Dep. 2 at 127:24–128:14, ECF No. 84-5.  However, Mr. Hirshfeld's expert report does not reflect any such knowledge.  Mr. Hirshfeld likewise acknowledged that he "ha[d] no basis to judge the respective

United States District Court
Northern District of California

15

search skill of the engineers" although he opined that "the assistance of the engineers furthers the diligence of the prior art searching."  Hirshfeld Rep. ¶ 115.  Mr. Hirshfeld's opinions regarding the experience and qualifications of any of these searchers are unsupported and grounded in speculation.  Accordingly, the Court excludes Mr. Hirshfeld's opinions regarding their qualifications and experience.

Plaintiffs argue that Mr. Hirshfeld's opinions regarding the skill and experience of searchers at professional search firms Cardinal IP and Clarivate are similarly unsupported and grounded in speculation.  Plaintiff cites *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, for the proposition that Mr. Hirshfeld's reliance on Cardinal's reputation is improper.  No. 13-cv-366, 2016 WL 8274173 (E.D. La. May 26, 2016).  However, *Tajonera* concerned an expert's opinions regarding the defendant's reputation and company culture, where the expert's report did not include "any experience, expertise, or methodology" to qualify him to opine on those issues.  *Tajonera*, 2016 WL 8274173, at *8.  In contrast, Mr. Hirshfeld's experience set forth in his expert report qualifies him to opine on the reputation of patent search firms.

Accordingly, the Court does not exclude Mr. Hirshfeld's opinions regarding the reputation of patent search firms Cardinal IP and Clarivate.  The Court excludes, however, Mr. Hirshfeld's rebuttal opinion that Simpson's Clarivate search was "conducted by an accomplished and significantly experienced searcher[,]" for which Mr. Hirshfeld provides no support.  Hirshfeld Rebuttal Rep. ¶ 11.

### vi.    Conclusion -  Mr. Hirshfeld

For these reasons, Plaintiffs' motion to exclude Mr. Hirshfeld's opinions is **GRANTED IN PART** and **DENIED IN PART** as stated above.

### b.    Opinions of Charles Cypher

Plaintiff asks the Court to exclude the opinions of Charles Cypher regarding the scope and diligence of invalidity searches and regarding the qualifications and experience of prior art searchers he engaged.

Mr. Cypher is a solo practitioner in the Law Office of Charles R. Cypher.  Cypher Decl. ¶ 2, ECF No. 84-3.  Mr. Cypher passed the Patent Bar in 1997 and has been working on patent

matters as a lawyer for Simpson since then.  *Id.* ¶ 3.  Mr. Cypher has "been closely involved with the drafting and prosecution" of at least 21 U.S. patents related to joist hangers and over 100 patents related to light frame construction or structural connectors.  *Id.* ¶ 4.  This work includes patent searching and overseeing foreign prosecution of patents in Europe, Canada, Australia, New Zealand and Japan.  *Id.*

In a declaration submitted pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), Mr. Cypher opines that the foreign associates he engaged to perform searches for Simpson in May 2019 were accomplished patent attorneys with significant experience performing and/or directing prior art searches; that the search performed by Cardinal IP in December 2019 and January 2019 search was a comprehensive search; and that the prior art searches performed by Mr. Cypher and the foreign associates constituted, in aggregate, a comprehensive search to invalidate claim 40 of the '510 patent.  *Id.* ¶¶ 6(d), (e), (f).  Mr. Cypher did not provide an opinion as to the diligence or scope of the individual searches performed by the foreign associates he engaged.  However, Mr. Cypher testified that he relied on his review of each of the associates' searches in forming this opinion.  ECF No. 104-30 at 88:3–89:6, 89:17-24 (Cypher Dep.); *see also id.* at 94:13-15.  Mr. Cypher's July 31, 2024 declaration did not include any analysis of the qualifications of any of the foreign associates he engaged to perform searches for Simpson.  Rather, his declaration includes the conclusory statement that:

> The foreign associates that I engaged to perform searches in Japan, Korea, Canada, and Australia/New Zealand in May 2019, as well as the outside searchers engaged by some of those foreign associates, were accomplished patent attorneys with significant experience performing and/or directing prior art searches.

Cypher Decl. ¶ 6(d).

Mr. Cypher testified in his deposition that prior to preparing his declaration, he followed up with the foreign associates who had run searches for relevant prior art in Japan, Korea, Canada, and Australia and New Zealand, and obtained and reviewed information regarding their searches.  Cypher Opp. Dec. ¶ 32, ECF No. 104 & Cypher Dep.at 88:24–89:6.  This email correspondence included requests for information regarding the searchers' qualifications and experience and responses regarding the searchers' qualifications.  *See* ECF Nos. 104-26, 104-27, 104-28, 104-29

United States District Court
Northern District of California

1   (email correspondence regarding prior art searches for Japan, South Korea, Australia and New

2   Zealand, and Canada, respectively).  Mr. Cypher also established that he had worked with each of

3   the law firms he engaged for the prior art searches in Australia and New Zealand, Canada, and

4   Japan for over a decade.  *See* Cypher Dep. at 90:17-25 (history of work with Australian law firm

5   Spruson and Ferguson), 106:6-20 (history of work with Japanese law firm Asamura), 96:14-97:10

6   (history of work with Canadian law firm Riches, McKenzie & Herbert LLP).  Mr. Cypher testified

7   that that he had previously used Korean law firm Kim & Chang previously for trademark letters,

8   but that most of Mr. Cypher's foreign patent work is not conducted in Korea.  *Id.* at 102:19-25; *see*

9   *also* Cypher Decl. ¶ 4 (naming "Europe, Canada, Australia, New Zealand, and Japan" as

10  jurisdictions where Simpson regularly patents inventions).  Based on this testimony, the Court

11  finds Mr. Cypher's opinions regarding the experience and qualifications of these searchers are

12  sufficiently supported and **DENIES** this portion of Plaintiffs' motion.

13          Plaintiff argues that Mr. Cypher's opinions about the scope and diligence of Cardinal IP's

14  search and the searches performed by Mr. Cypher and the foreign associates are unreliable

15  because Mr. Cypher's opinions were conclusory and because he did not review the results of the

16  foreign associate searches.  Pls.' Mot. in Limine at 15, 19–20.  Simpson asserts that "Mr. Cypher

17  is not a retained expert but a witness who is providing primarily percipient testimony regarding the

18  searches he performed as well as certain opinion testimony based on his decades of experience

19  performing prior art searching, particularly as to joist hangers."  Def.'s Opp'n to Pls.' Daubert

20  Mot. at 22.  But Mr. Cypher's experience performing prior art searches related to joist hangers

21  does not make his opinions on the diligence of prior art searches automatically admissible.

22  Rather, it subjects Mr. Cypher's opinion testimony to the reliability requirements of Federal Rule

23  of Evidence 702.

24          Mr. Cypher provides only a high-level summary of Cardinal IP's December 2018/January

25  2019 invalidity search.  Mr. Cypher states that a representative of Simpson instructed Mr. Cypher

26  to conduct a "full search" "with a 'focus on Japan'" to invalidate claim 40 of the '510 Patent,

27  "request[ing] that the search focus on 'hangers that have some spacing between the part of the

28  hanger that holds the joist/beam and the part of the hanger that connects to the wall.'"  Cypher

Decl. ¶¶ 6(a), 11.  Mr. Cypher provides no further explanation of the Cardinal IP search, or any facts or data to support his conclusion that the Cardinal IP search was comprehensive.  The Court thus grants Plaintiffs' motion to exclude Mr. Cypher's opinions as to the scope and diligence of the Cardinal IP search.  *See* Fed. R. Evid. 702.

As to Mr. Cypher's own searches and the searches performed by the foreign associates he engaged, Mr. Cypher's declaration includes broad instructions Simpson provided to Mr. Cypher "to perform prior art validity searching related to the purported invention set forth in the allowed claims of the '701 Application/the '242 Patent."  *Id.* ¶ 13.  Mr. Cypher also sets forth his general search process and notes that he began his prior art search by building off a foundation of prior patentability searches he had done for Simpson.  *Id.* ¶¶ 14, 15, 22.  Mr. Cypher states that he spent approximately 10 hours conducting searches in December 2018 and January 2019, 19 hours in May and June 2019, and a further 6.5 hours in June and July 2019 "related to invalidating dependent claims of the '510 Patent[.]"  *Id.* ¶¶ 13, 22, 23.  Mr. Cypher describes his searching in December 2018 and January 2019 as "extensive."  *Id.* ¶ 15.  Regarding the prior art searches Mr. Cypher engaged foreign associates to conduct in 2019, Mr. Cypher avers:

> I informed each of them that "we are looking for prior art that can be used against US Patent 10,024,049 which has a US provisional filing date of December 31, 2013. We are interested in finding prior art where there is sheathing or panels (particularly firestopping panels) placed between the end of the joist and the header or wall supporting the joist." I also provided the foreign associates with examples of some of the best prior art that we had found up to that point.

*Id.* ¶ 19.  Mr. Cypher also explains why he provided these instructions to the foreign associates. *Id.* ¶ 20.  However, Mr. Cypher does not identify any of the specific databases that Cardinal IP, Mr. Cypher, or any other searcher used to carry out the searches Mr. Cypher opines were "comprehensive," does not list or otherwise provide search terms used; and does not identify the number of results yielded from any of the searches.  The Court finds Mr. Cypher thus fails to provide an adequate basis for his opinions that Cardinal IP's December 2018/January 2019 search constituted a comprehensive prior art search or that the searches Mr. Cypher performed and directed foreign associates to perform before Simpson filed its PGR petition constituted a comprehensive search to invalidate the asserted claim of the '510 Patent.  *See Innovative Memory*

United States District Court
Northern District of California

*Sys*, 2022 WL 4548644, at \*4 (finding defendant "conspicuously does not provide sufficient details, such as an explanation of the search process, search terms, or hit counts from the first three searches, to enable the Court to assess whether those searches were diligent"); *Ironburg II*, 2024 WL 2091177, at \*8 (considering whether specific searches proved or tended to prove that a skilled searcher conducting a diligent search could have been expected to discover reference). Accordingly, the Court **GRANTS** Plaintiffs' motion to exclude Mr. Cypher's opinions about the scope and diligence of Cardinal IP's search and the searches performed by Mr. Cypher and the foreign associates.

### c.    Opinion of Long Nguyen

Plaintiffs ask the Court to exclude as unreliable the opinion of Long Nguyen that Simpson's post-PGR search by professional patent search firm Clarivate was diligent because Mr. Nguyen has no personal knowledge of the search on which he opines.

Mr. Nguyen is Associate Director-Mechanical Engineering at Clarivate.  In this position, Nguyen "direct[s], manage[s], and oversee[s] patent validity searches for patents in the mechanical arts."  Nguyen Decl. ¶ 2, ECF No. 85-5.  Nguyen has approximately twenty years of experience as a professional searcher, including six years as a patent examiner in the mechanical arts unit at USPTO and 14 years as a  professional searcher at Clarivate.  *Id.*  Mr. Nguyen estimates that he has performed thousands of searches during the course of his career.  *Id.*

Plaintiffs argue that Mr. Nguyen's opinions should be excluded as unreliable because he did not perform the searches and "has no knowledge regarding the results" of the searches performed by the searcher "or the process by which the searcher reviewed the search results and determined which references were relevant."  Pl.'s Mot. to Exclude at 20.  First, the Court finds Plaintiffs misstate Nguyen's deposition testimony.  The excerpts of Mr. Nguyen's testimony Plaintiffs offer in support of their motion indicate that Mr. Nguyen supervised the search, knew the specific searcher who worked on the project and reviewed the searcher's work, including by looking at the specific search strings the searcher used.  Nguyen Dep. at 82:18-83:5, 89:2-18, 113:7-16, ECF No. 85-6.  The fact that the searcher did not consult with Mr. Nguyen at every step of the search does not render Mr. Nguyen's opinion unreliable.  Accordingly, Plaintiffs' motion to

1    exclude Mr. Nguyen's opinion is **DENIED**.

2    ### IV.    MOTION FOR SUMMARY JUDGMENT

3    **A.    Legal Standard**

4    Summary judgment is proper where there is "no genuine dispute as to any material fact and

5    the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving

6    for summary judgment bears the initial burden of identifying those portions of the pleadings,

7    discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*

8    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome

9    of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a

10   reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

11   U.S. 242, 248 (1986).

12   If the moving party meets its initial burden, the opposing party must then set forth specific

13   facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S.

14   at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving

15   party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). However, it is not the

16   task of the Court "'to scour the record in search of a genuine issue of triable fact." *Keenan v.*

17   *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden "to identify with

18   reasonable particularity the evidence that precludes summary judgment." *Id.*; *Cafasso, U.S. ex rel.*

19   *v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (The nonmoving party "must

20   set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.")

21   (citations omitted). Thus, "[t]he district court need not examine the entire file for evidence

22   establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with

23   adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*,

24   237 F.3d 1026, 1031 (9th Cir. 2001); *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626

25   F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.")

26   (citations omitted).

27   "While the evidence presented at the summary judgment stage does not yet need to be in a

28   form that would be admissible at trial, the proponent must set out facts that it will be able to prove

United States District Court
Northern District of California

1    through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010)

2    (citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must

3    be made on personal knowledge, set out facts that would be admissible in evidence, and show that

4    the affiant or declarant is competent to testify on the matters stated.")).  If the nonmoving party

5    fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not

6    significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50

7    (citations omitted).

**B.    Discussion**

9         Plaintiffs seek summary judgment on Simpson's affirmative defense and counterclaim,

10   arguing that Simpson is estopped, pursuant to 35 U.S.C. ¶ 325(e)(2), from asserting the Cullen,

11   Chapin and Yamaguchi references as grounds for invalidity of the '510 Patent.  Plaintiffs contend

12   that Simpson reasonably could have raised each of the Cullen, Chapin and Yamaguchi references

13   (collectively, the "prior art references") during Post-Grant Review.  In support of their motion,

14   Plaintiffs offer the expert report of Eugene Lhymn, who opines that the disputed references would

15   have been found by an ordinarily skilled searcher's reasonably diligent search.  ECF No. 89-1

16   (Lhymn Report).  Plaintiffs contend that Simpson discovered, or should have discovered, each of

17   the three prior art references Simpson now asserts as grounds for invalidity.

18        In opposition to Plaintiffs' motion, Simpson argues that the searches it conducted prior to

19   initiating PGR review were diligent and did not turn up the references at issue.  Simpson provides

20   evidence that its patent prosecution counsel retained a patent art search firm, Cardinal IP, in

21   December 2018 to conduct a "standard invalidity search based on independent claim 32 of the

22   ''701 Application[,]" requesting that the search focus on "hangers that have some spacing between

23   the part of the hanger that holds the joist/beam and the part of the hanger that connects to the

24   wall."  Pl.'s Opp'n to Mot. in Limine at 4.

25        Mr. Lhymn attests to finding all three disputed prior art references using methods available

26   on or before September 5, 2019, the date Simpson filed its petition for PGR.  Lhymn Report ¶¶ 26,

27   35.  Mr. Lhymn explains that an ordinarily skilled searcher would have searched for terms that

28   appear in the claims and specification of the '510 Patent to locate prior art related to the subject

matter of the claims of the '510 Patent. *Id.* ¶ 47. Mr. Lhymn attests that a skilled searcher would accordingly have generated search strings to run a Boolean "TAC" (title, abstract and claims) search for "hanger*" and "joist*". *Id.*

### 1. Chapin and Yamaguchi References

Mr. Lhymn attests that "Chapin shares a common subject matter classification with the '510 patent – namely IPC class E04B (GENERAL BUILDING CONSTRUCTIONS; WALLS, e.g. PARTITIONS; ROOFS; FLOORS; CEILINGS; INSULATION OR OTHER PROTECTION OF BUILDINGS), all subclasses under the parent class E04B." Lhymn Rep. ¶ 88. Mr. Lhymn attests that he found Chapin in IPC class E04B using a search tool called Patbase. *Id.* ¶¶ 35, 88. Patbase classifies Chapin in IPC E04B, which Mr. Lhymn notes is "an older legacy classification of Chapin." *Id.* ¶ 88. However, USPTO and EPO, other search tools, do not classify Chapin under that same code. *Id.* Mr. Lhymn acknowledges that while he personally uses Patbase, "subscription-based patent search tools as well as free patent search tools have substantially the same underlying patent data" and that "the primary difference among the various patent search tools is the user-interface." *Id.* ¶ 35. Plaintiffs have not identified any other database that sorts Chapin in IPC class E04B, nor have they provided any evidence that a skilled searcher is required to use multiple patent search tools in order to conduct a reasonably diligent search.

Mr. Lhymn further attests that since the '510 Patent is classified in CPC and IPC class E04B, an ordinarily skilled searcher would look to the parent class E04 to determine if other classes may be useful. *Id.* ¶ 89. Mr. Lhymn attests that an ordinarily skilled searcher would recognize E04C, defined as "Structural Elements; Building Materials," as particularly relevant to the '510 Patent, and that running the search strings Mr. Lhymn identified through Patbase returns Chapin among 443 results. *Id.* ¶¶ 89, 90.

As to the Yamaguchi reference, Mr. Lhymn asserts that a skilled searcher conducting a reasonably diligent search in the mechanical arts would have searched design patents and industrial designs as well as utility patents. Lhymn Decl. ¶¶ 38, 40. Mr. Lhymn attests that a skilled searcher would first search the USPC and Japanese classification systems during a reasonably diligent design search. *Id.* ¶¶ 42, 43. Mr. Lhymn avers that in the relevant timeframe,

United States District Court
Northern District of California

1    "a skilled searcher would easily determine" Japan classification L4-510 ("Metal Beam Stoppers

2    for Steel Structure, Metal Parts for Supporting Beams, Metal Parts Supporting Pillars of

3    Buildings") to be the best-fit classification to search for relevant design patents, and that a skilled

4    searcher would likewise search within older Japanese classifications that correspond to L4-510.

5    *Id.* ¶ 44.

6         Prior to beginning his search, Mr. Lhymn was provided with the '510 Patent and a list of

7    the prior art references.  Dep. of Eugene Lhymn at 75:22–76:3, ECF No. 98-2.  Mr. Lhymn was

8    tasked with assessing "whether a skilled searcher would have located certain references."  Lhymn

9    Dep. at 112:10-23.  Mr. Lhymn testified in his deposition that he formed the search strings at an

10   "initial stage" in which he did not know the exact classification of all the references he was

11   retained to look into.  Lhymn Dep. at 95:15-20; *see generally id.* at 91:1–95:20.  Mr. Lhymn

12   testified that he "glanced at the references" to confirm he had the correct references and

13   publication numbers.  Lhymn Dep. at 79:20–80:2; 83:13-17; 90:18-23.  However, Mr. Lhymn's

14   timekeeping entries indicate that he spent several hours reviewing the references in question

15   before developing any search strings.  Mr. Lhymn's invoices include 14 hours of entries described

16   as "patent prior art analysis," "JP Design Ref analysis,"[3] or a combination of the two, all of which

17   are described as having taken place before Mr. Lhymn's first entry for "Search string [research

18   and development]."  Ex. C to Mauch Decl. (Lhymn Invoice) at Lhymn00002074, ECF  No. 97-2;

19   *see also* Lhymn Dep. at 98:13–99:16.  Mr. Lhymn also logged an additional 2.8 hours analyzing

20   the Yamaguchi reference before completing his work on the search strings.  Lhymn Invoice at

21   Lhymn00002074-75.

22        Unlike some of the cases where courts have declined to apply estoppel due to hindsight

23   bias, Mr. Lhymn does offer explanations to support why he believes a skilled searcher would

24   apply the search criteria he used.  *See, e.g., GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18-cv-

25   5290-CM, 2023 WL 8827572, at *7 (S.D.N.Y. Dec. 21, 2023) (declining to apply estoppel where

26   patent holder provided no expert testimony to explain why search terms would have been chosen

27

28   _____

     [3]  Mr. Lhymn confirmed in his deposition that "JP Design Ref" refers to the Yamaguchi reference.
     Lhymn Dep. at 80:9–81:2.

United States District Court
Northern District of California

1    by a skilled and diligent searcher, and where search strings included terms that appeared

2    infrequently in the patent).  However, in light of the undisputed time entries showing that Mr.

3    Lhymn reviewed the prior art references extensively prior to constructing his search strings, the

4    Court finds it is more likely than not that Mr. Lhymn's conclusions regarding the searches a

5    skilled searcher performing a diligent search reasonably would have conducted are "plagued by

6    hindsight bias." *EIS, Inc. v. IntiHealth Ger GmbH*, No. 19-cv-1227-GBW, 2023 WL 6797905, at

7    *4 (D. Del. Aug. 30, 2023); *see also Ironburg II*, 2024 WL 2091177, at *10 n.17 (finding search

8    results of expert who testified for patent owner were not product of hindsight analysis where the

9    references at issue "were not provided or made known to [the expert] before he commenced his

10   search").  Accordingly, although the Court declines to categorically exclude Mr. Lhymn's

11   testimony on Defendant's Daubert motion, the Court declines to afford substantial weight to Mr.

12   Lhymn's expert testimony.

13           Defendant also presents evidence sufficient to make an issue of Mr. Lhymn's credibility.

14   Mr. Lhymn testified that a reasonably diligent invalidity search performed by an ordinarily skilled

15   searcher would take approximately 24 hours on average.  Deposition of Eugene Lhymn at 8:4-9:7,

16   ECF No. 98-2.  Mr. Lhymn testified that a patentability search would take approximately 8 hours,

17   and an FTO or clearance search would take approximately 24 hours.  Lhymn Dep. at 9:13-17,

18   9:18-10:9.  Meanwhile, in his deposition, Mr. Lhymn testified that he personally performed 1,000

19   searches and managed an additional 1,000 searches between July 2023 and August 2024.  Lhymn

20   Dep. at 16:1–17:7; 18:20–19:1.  The Court finds this is not credible.  Even if every single one of

21   the thousand searches Mr. Lhymn conducted in that time frame were an 8-hour patentability

22   search[4] and it only took one hour to manage each of the 1,000 searches Mr. Lhymn avers he

23   managed in that period, that would add up to 9,000 hours of work, or 375 24-hour days.  The

24   Court finds the physical impossibility of the searches Mr. Lhymn attests to conducting in the year

25   leading up to his deposition create a factual dispute as to his credibility.

26   _____

27   [4]  Mr. Lhymn testified, however, that "invalidity searching is a big part of [his firm's] search
     practice" and that he "definitely conducted invalidity searches in that time frame[,]" although he
28   was not able to provide a rough estimate of how many of those searches were invalidity searches.
     Lhymn Dep. at 18:4-19.

United States District Court
Northern District of California

1        Accordingly, the Court finds that Plaintiffs have not provided sufficient evidence to

2  demonstrate by a preponderance of the evidence that a skilled searcher performing a diligent

3  search would have found the Chapin and Yamaguchi references.

4       **2.**      **Cullen Reference**

5        Simpson argues that Plaintiffs cannot prove that a skilled searcher conducting a diligent

6  search reasonably would have been expected to discover the Cullen reference because Cullen was

7  not discovered in Simpson's pre-PGR searching and was only discovered by an "atypical" search

8  for hangers where moisture, rather than fire, was a concern.

9        Mr. Lhymn attests that Cullen shares a common subject matter classification with the '510

10  Patent – CPC class E04B (GENERAL BUILDING CONSTRUCTIONS; WALLS, e.g.

11  PARTITIONS; ROOFS; FLOORS; CEILINGS; INSULATION OR OTHER PROTECTION OF

12  BUILDINGS), subclass 1/2612 (JOIST HANGERS).  Lhymn Rep. ¶ 53.  Mr. Lhymn states that

13  Cullen would have been findable running the search string "(hanger*)" within the CPC

14  E04B1/2612 classification, limited to references with a priority date before December 31, 2013,

15  and that therefore "Cullen would have been low hanging fruit for any prior art search as conducted

16  by an ordinarily skilled searcher, much less a reasonably diligent prior art search."  Lhymn Rep.

17  ¶ 54.

18        As discussed above, the Court finds Mr. Lhymn's opinions regarding the search strings he

19  constructed are insufficient to demonstrate that a skilled searcher performing a diligent search

20  would have found the disputed references.  However, Cullen appeared among the 377 search

21  results yielded from search string 65 of a search performed by Cardinal IP at Simpson's direction

22  during the PGR period, as well as among 741 results yielded from search string 64 of that same

23  search.  *See* Lhymn Rebuttal Rep. ¶¶ 38, 39, ECF No. 88-14; Cardinal IP Patent Search Report

24  dated Jan. 7, 2019 at SST004639), ECF No. 93-5; Dep. of Brian Hameder, ECF No. 88-13 at

25  105:11–107:08.  Brian Hameder, the Project Manager for the Cardinal IP search, testified that he

26  would expect the searcher to have reviewed the results of search string 65, but that he did not

27  know whether the searcher had done so.  Hameder Dep. at 107:2-8; Cardinal IP Patent Search

28  Report at SST004626 (identifying Hameder as Project Manager).  Simpson argues that the mere

fact that Cullen appeared within Simpson's PGR search results does not mean a skilled searcher performing a reasonably diligent search would have identified Cullen, because its relevance to the '510 Patent is not apparent from its figures or title abstract.  But district courts within this circuit have rejected the argument that a skilled searcher performing a diligent search would not have discovered a reference that appeared within search results but that the searcher believed to be of "peripheral" relevance.  *Ironburg II*, 2024 WL 2091177, at *8–9.  In light of the undisputed evidence that Cullen appeared within the results of Simpson's PGR search and that the searcher reasonably should have reviewed those results, the Court finds Plaintiffs have met their burden of demonstrating by a preponderance of the evidence that a skilled searcher performing a diligent search would have discovered the Cullen reference.  Accordingly, the Court finds the Cullen reference reasonably could have been raised during PGR.

### 3. Conclusion

For these reasons, the Court **GRANTS** Plaintiffs' motion for partial summary judgment as to the Cullen reference and **DENIES** Plaintiffs' motion for partial summary judgment as to the Chapin and Yamaguchi references.

### V.    CONCLUSION

Based on the analysis above, the Court hereby **DENIES** Defendant's motion in limine, **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion in limine, and **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: May 30, 2025

THOMAS S. HIXSON
United States Magistrate Judge