1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7   COLUMBIA INSURANCE CO., et al.,          Case No.  19-cv-04683-TSH

8                    Plaintiffs,             **ORDER GRANTING IN PART AND
                                             DENYING IN PART DEFENDANT'S
9             v.                             MOTION IN LIMINE; DENYING
                                             PLAINTIFFS' MOTION FOR
10  SIMPSON STRONG-TIE COMPANY               SUMMARY JUDGMENT; AND
    INC.,                                    DENYING DEFENDANT'S CROSS-
11                                           MOTION FOR SUMMARY
                     Defendant.              JUDGMENT (PUBLIC VERSION OF
12                                           ECF NO. 191)**

13                                           Re: Dkt. Nos. 141, 142, 148

14

15                        I.    INTRODUCTION

16          Plaintiffs Columbia Insurance Co. ("Columbia") and MiTek Inc. (collectively "Plaintiffs")

17  filed a complaint for patent infringement against Defendant Simpson Strong-Tie Company Inc.

18  ("Simpson").  ECF No. 61 (First Amended Complaint).  Simpson filed a counterclaim for patent

19  invalidity against Plaintiffs.  ECF No. 64.  Pending before the Court are Simpson's Motion in

20  Limine ("Def.'s Mot. Lim.") (ECF No. 148), Plaintiffs' Motion for Summary Judgment for patent

21  infringement ("Pls.' MSJ") (ECF No. 141), and Simpson's Cross-Motion for Summary Judgment

22  for patent invalidity ("Def.'s MSJ") (ECF No. 142).[1]  The Court finds these motions suitable for

23  disposition without oral argument and **VACATES** the July 10, 2025, hearing.  *See* Civ. L.R. 7-

24  1(b).  For the reasons set forth below, the Court **GRANTS IN PART and DENIES IN PART**

25  _____

26  [1] For precision's sake, citations herein are to the unredacted versions of Plaintiffs' Opposition to
    Simpson's Motion for Summary Judgment and Controverting Statement of Facts (ECF Nos. 157-
27  2, 157-3), Dr. Serrette's Rebuttal Expert Report (ECF No. 147-2), and the declarations and
    exhibits in support of the parties' motions, which were filed under seal.  Most sections of these
    documents cited within this order can be found in redacted versions the parties filed on the public
28  docket.  *See* ECF Nos. 156 (redacted Pls.' Oppo.), 156-1 (redacted Pls.' CSF).

1   Simpson's Motion in Limine, **DENIES** Plaintiffs' Motion for Summary Judgment, and **DENIES**

2   Simpson's Cross-Motion for Summary Judgment.[2]

3   ## II.   BACKGROUND

4   ### A.   Factual Background

5   Columbia, located in Nebraska, is the owner of U.S. Patent No. 10,316,510 ("the '510

6   Patent"), entitled "Hanger for Fire Separation Wall," which is the patent-in-suit.  First Amended

7   Complaint ("FAC") (ECF No. 61) ¶¶ 1, 7, 15.  MiTek, located in Missouri, is the exclusive

8   licensee of the '510 Patent.  *Id.* at ¶¶ 2, 16.  MiTek manufactures and sells hangers used in

9   building construction and structures for connecting structural components to wall framing, such as

10  trusses and joists.  *Id.* at ¶ 17.  Simpson is a California corporation that "has made, used, sold, or

11  offered for sale fire wall hangers that are adapted for connecting a trusses and joist to walls."  *Id.*

12  at ¶¶ 3, 25; Simpson's Answer to FAC ("Def.'s Answer") ¶¶ 3, 25 (ECF No. 64).

13  Plaintiffs allege that Simpson's products infringe Claim 40 of the '510 Patent.  FAC ¶¶ 54–

14  55.  Simpson alleges that Claim 40 is invalid because it is anticipated by prior art, and it is obvious

15  over combinations of prior art.  Def.'s MSJ at 9:28, 19:21–20:2.

16  ### 1.   The '510 Patent

17  Plaintiffs filed a copy of the '510 Patent, issued on June 11, 2019, with their complaint.

18  FAC ¶¶ 7, 14; *see* FAC, Ex. A ('510 Patent) (ECF No. 61-1).  Plaintiffs also filed a copy of the

19  Post-Grant Review ("PGR") Certificate with their complaint which contains Claim 40 of the '510

20  Patent.  FAC ¶¶ 14, 30; *see* FAC, Ex. A, at 55 (PGR Certificate) (ECF No. 61-1).  The '510 Patent

21  issued from U.S. Patent Application No. 16/225,517 which was filed on December 19, 2018.  FAC

22  ¶ 8; '510 Patent at 1.  The '510 Patent claims a priority date of December 31, 2013.  '510 Patent at

23  col. 1, ln. 6–11.

24  The '510 Patent describes the claimed invention as "[a] hanger for connecting a structural

25  component to a wall that can have sheathing mounted thereon either before or after the hanger is

26  connected to the wall."  *Id.* at Abstract.  Claim 40, an independent claim, is directed to

27  _____

28  [2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 9, 17.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> A hanger for connecting a structural component to a wall adapted to have drywall mounted thereon, the hanger comprising:
>
> a channel-shaped portion configured to receive the structural component;
>
> an extension portion extending from the channel-shaped portion and configured to extend through the drywall; and
>
> a connection portion including a top flange configured for attachment to a top surface of a top plate of the wall and a back flange extending from an edge of the top flange, the back flange having a front surface lying in a back flange plane, the extension portion spacing the channel-shaped portion from the back flange plane by a distance sized large enough to permit the drywall to be received between the channel-shaped portion and the back flange plane;
>
> wherein the extension portion includes an extension flange extending from the back flange of the connection portion to the channel-shaped portion.

PGR Certificate at col. 1, ln. 7–col. 2, ln. 12.

The Specification of the '510 Patent teaches the following information. Fire separation walls are often used to "prevent fire from spreading between the adjoining units in a multifamily structure." '510 Patent at col. 1, ln. 21–25. "Typically, gypsum board is used as a fire retardant sheathing along these walls." *Id.* at col. 1, ln. 28–29. Floor trusses or joints cannot be attached to the sheathing and "must therefore be attached to the wall framing." *Id.* at col. 1, ln. 29–33. "A cutout for the entire cross section of the truss leaves a large discontinuity in the fire retardant sheathing"; thus, "interruptions of the sheathing [should be] kept to a minimum." *Id.* at col. 1, ln. 33–38.

The Specification discloses several embodiments of the claimed invention. Some embodiments disclose the use of fire retardant sheathing. *Id.* at col. 4, ln. 15–19. "In use, the truss hanger is positioned in the slot of the fire retardant sheathing mounted on the wall." *Id.* at col. 7, ln. 18–19. "In one embodiment, the slot can be cut using the slot template (either before or after the sheathing is mounted to the wall)." *Id.* at col. 7, ln. 23–25. "In another embodiment, the truss hangers can be installed without pre-forming the slot in the fire retardant sheathing." *Id.* at col. 7, ln. 46–48. And in another embodiment, "the truss hangers can be installed on the wall before the sheathing is mounted on the wall." *Id.* at col. 7, ln. 57–29.

1    Plaintiffs assert that MiTek's FWH hangers (the "FWH Series") practice Claim 40 of the

2    '510 Patent.  *See* Pls.' MSJ at 2:15–25 ("The FWH Series commercially embody a number of

3    patented inventions in a patent family.").

4        **2.    The Accused Products**

5    Since 2019, Simpson has made and sold within the United States a line of three fire wall

6    hangers:  the DGF models, the DGHF models, and the DGBF models which include skewed

7    versions and offset versions.  FAC ¶¶ 25–26; Def.'s Answer ¶¶ 25–26.  The DGF, DGHF, and

8    DGBF models are collectively referred to as the "DGF Series."  *Id.*  In June 2023, Simpson began

9    phasing out the DGF Series following its introduction of the DGT Series.  FAC ¶ 27; Def.'s

10   Answer ¶ 27.  Simpson has reserved the right to continue to sell the DGF Series in the future and

11   intends to do so.  FAC ¶ 28; Def.'s Answer ¶ 28.  Plaintiffs allege that all models in the DGF

12   Series read on Claim 40 of the '510 Patent and that the DGF Series hangers are the "Accused

13   Products."  FAC ¶¶ 28, 54.  Plaintiffs do not allege that Simpson's DGT Series reads on Claim 40

14   of the '510 Patent.

15       **3.    Asserted Prior Art References**

16   Simpson alleges that certain prior art references are relevant to whether Claim 40 of the

17   '510 Patent is anticipated or obvious.  On April 1, 2024, Simpson served its invalidity contentions

18   pursuant to Patent Local Rules 3-3 and 3-4, in which Simpson alleged that five references—

19   Yamaguchi, Cullen, Adams, Chapin, and Bundy—are relevant prior art.  *See* Declaration of B.

20   Scott Eidson ¶ 6 (ECF No. 87); Eidson Decl., Ex. E (ECF No. 88-4) (Def.'s Invalidity

21   Contentions).  Simpson contended that these references anticipated and rendered obvious Claim

22   40 of the '510 Patent.  Def.'s Invalidity Contentions at 3–4.

23   In its instant Motion for Summary Judgment, Simpson asserts that the Cullen, Yamaguchi,

24   and Bundy references anticipate and/or render obvious Claim 40.[3]  Def.'s MSJ at 9:28, 19:21–

25

26   [3] As discussed below, the Court issued an order (1) concluding that Simpson is estopped from
     asserting the Cullen reference in these proceedings; and (2) granting Plaintiffs partial summary

27   judgment that Simpson cannot assert Cullen in its counterclaim for invalidity.  *See* ECF No. 151.
     In its Motion for Summary Judgment, Simpson does not rely on the Adams or Chapin references.

28   *See* ECF No. 142.  Therefore, the Court does not address the Cullen, Adams, or Chapin references
     in this Order.

United States District Court
Northern District of California

20:2.  There is no dispute that Simpson's asserted references qualify as potential prior art based on their reference dates.  Plaintiffs' Controverting Statement of Facts ¶¶ 33, 46 ("Pls.' CSF") (ECF No. 156-1).

Yamaguchi is Japanese Industrial Design No. D1213894, issued on August 09, 2004.  *See* Declaration of Joseph Mauch in Support of Simpson's Motion for Summary Judgment (ECF No. 144), Ex. G, at 1 ("Yamaguchi") (ECF No. 144-7).  Yamaguchi discloses "a joist bracket that is attached to sills and bears a joist bridging the sills."  *Id.*

Bundy is U.S. Patent No. 9,394,680, titled, "Drywall Joist Hanger," and was filed on December 14, 2013.  *See* Mauch Decl., Ex. I, at 1 ("Bundy") (ECF No. 144-9).  Bundy describes the claimed invention as

> [a] connection utilizing a joist hanger to hang a generally horizontal joist or beam from a wood structural support member such as a top plate or header in cooperation with a first plurality of fasteners such as screws and one or more generally vertical drywall panels.

*Id.*  The specification of the Bundy patent teaches that in the claimed invention,

> [t]he drywall can simply be applied to the front face of the supporting member, completing covering and shielding it, and the joist hanger can then be attached by driving long screws directly through the drywall and into the supporting structural member.

*Id.* at col. 2, ln. 20–24.  The specification discloses that the claimed invention

> provides a connection that allows a joist hanger to be attached to a supporting structural member with drywall panels interposed between them without damaging the drywall panels or compromising the strength of the connection.

*Id.* at col. 2, ln. 37–41.  The specification further teaches that for drywall panels manufactured in the United States and Canada,

> [c]ommon panel thicknesses are ½-inch and 5/8-inch. In the present invention, two layers of 5/8-inch drywall is preferred. Drywall is naturally fire resistant and can be used to cover and protect the structural members of a building.

*Id.* at col. 5, ln. 16–20.

## B.    Procedural Background

Plaintiffs filed a complaint in this Court on August 12, 2019, alleging that Simpson infringed several claims of the '510 Patent.  ECF No. 1.  On September 05, 2019, Simpson filed a

petition for PGR with the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("USPTO"), challenging the validity of the asserted claims of the '510 Patent. *See* ECF No. 33 (Joint Stipulation to Stay Case Pending Resolution of PGR). On October 23, 2019, the Court stayed this case pending the resolution of PGR. ECF No. 34. On March 12, 2020, the PTAB instituted PGR for the '510 Patent. ECF No. 38 (Joint Status Report). On March 11, 2021, the PTAB issued its PGR decision. *Id.* In its decision, the PTAB found claims 1–20 of the '510 Patent invalid, but granted a motion to amend as to a substitute claim—Claim 40—which the PTAB found was patentable. *Id.*; FAC ¶¶ 11, 43, 47. On March 31, 2022, the Court of Appeals for the Federal Circuit ("Federal Circuit") affirmed the PGR decision. ECF No. 48 (Joint Status Report). On November 03, 2023, the USPTO issued a PGR Certificate incorporating Claim 40 into the '510 Patent. Eidson Decl. ¶ 5; Eidson Decl., Ex. D (ECF No. 88-3).

On December 13, 2023, Plaintiffs filed the operative First Amended Complaint, alleging that Simpson infringed Claim 40 of the '510 Patent. FAC ¶¶ 25–35, 53–61 (ECF No. 61). Plaintiffs seek, *inter alia*, treble compensatory damages, an order enjoining Simpson from infringing Claim 40, attorneys' fees, and interest. *Id.* at 12–13. On January 3, 2024, Simpson filed an Answer to the First Amended Complaint and a counterclaim seeking a declaratory judgment that the '510 Patent is invalid. ECF No. 64. In its counterclaim, Simpson requests, *inter alia*, that the Court grant Simpson a declaratory judgment that Claim 40 of the '510 Patent is invalid, an order enjoining Plaintiffs from charging or asserting infringement of any claim of the '510 Patent against Simpson or anyone in privity with Simpson, and dismissal of Plaintiffs' First Amended Complaint. *Id.* at 11:1–10. On January 17, 2024, Plaintiffs filed an Answer to Simpson's Counterclaim and asserted PGR estoppel. ECF No. 67.

On May 15, 2024, the parties filed a Joint Stipulation Regarding Claim Construction requesting that the Court adopt the parties' stipulated constructions and vacate the *Markman* hearing scheduled for August 22, 2024, because there were no disputes regarding claim construction. ECF No. 75. On May 28, 2024, the Court issued an order adopting the parties' stipulated claim constructions and vacated the *Markman* hearing. ECF No. 76.

On October 28, 2024, Plaintiffs filed a motion for partial summary judgment, seeking

summary judgment on Simpson's counterclaim that Claim 40 is invalid. ECF No. 86. In that motion, Plaintiffs argued that under PGR estoppel (35 U.S.C. § 325(e)(2)), Simpson is estopped from asserting the Yamaguchi, Cullen, and Chapin references as prior art against Claim 40 of the '510 Patent. *Id.* at 1–2. On May 30, 2025, the Court issued an order (1) concluding that Simpson is estopped from asserting the Cullen reference in these proceedings; and (2) granting Plaintiffs' motion as to the Cullen reference only. *See* ECF No. 151.[4]

Plaintiffs filed their instant Motion for Summary Judgment on May 5, 2025, arguing summary judgment in their favor is appropriate for their patent infringement claim because the Accused Products literally infringe Claim 40 of the '510 Patent. Pls.' MSJ at 1:20–23 (ECF No. 141). Simpson filed an opposition on May 30, 2025. ECF No. 153 ("Def.'s Oppo."). Plaintiffs filed a reply on June 26, 2025. ECF No. 188 ("Pls.' Reply").

Simpson filed its instant Cross-Motion for Summary Judgment on May 6, 2025, arguing summary judgment in its favor is appropriate for its declaratory judgment claim on patent invalidity because Claim 40 is anticipated by prior art (Yamaguchi and Cullen), and it is obvious over combinations of prior art (Yamaguchi/Bundy and Bundy/Cullen). Def.'s MSJ at 9:28, 19:21–20:2 (ECF No. 142). Plaintiffs filed an opposition on May 30, 2025. ECF No. 157-2 ("Pls.' Oppo."). Simpson filed a reply on June 26, 2025. ECF No. 184 ("Def.'s Reply").

On May 14, 2025, Simpson filed its instant Motion in Limine to exclude the expert opinions and testimony of Plaintiffs' expert, Dr. Reynaud Serrette. ECF No. 148 ("Def.'s Mot. Lim."). Plaintiffs served Dr. Serrette's Rebuttal Expert Report on Simpson on March 21, 2025. *Id.* at 3:17–19; *see* Rebuttal Expert Report of Dr. Reynaud Serrette (ECF No. 147-2) ("Serrette Validity Report"). Plaintiffs previously served Dr. Serrette's Infringement Report on Simpson. *See* Expert Report of Dr. Reynaud Serrette on Infringement (ECF No. 148-4) ("Serrette Infringement Report"). Dr. Serrette is a civil engineer who opines on the validity of Claim 40 and responds to the reports of Simpson's retained expert witnesses. Serrette Validity Report ¶¶ 1, 3, 7. Simpson seeks to exclude several paragraphs from the Serrette Validity Report. Def.'s Mot. Lim.

---

[4] The Court's order was filed under seal (ECF No. 151). The redacted order was filed on the public docket (ECF No. 178).

United States District Court
Northern District of California

1    at 11:17–19, 25:18–21.  Plaintiffs filed an opposition to Simpson's Motion in Limine on June 12,

2    2025.  ECF No. 181 ("Pls.' Oppo., Mot. Lim.").  Simpson filed a reply on June 26, 2025.  ECF

3    No. 187 ("Def.'s Reply, Mot. Lim.").

## III.    CLAIM CONSTRUCTION

5        Courts construe patent claims as a matter of law.  *Markman v. Westview Instruments, Inc.*,

6    52 F.3d 967, 979 (Fed. Cir. 1995) (en banc).  Claim construction involves two steps:  (1)

7    reviewing intrinsic evidence consisting of the patent claims, specification, and prosecution history;

8    and (2) reviewing extrinsic evidence if necessary to determine a claim term's meaning.  *Phillips v.*

9    *AWH Corp.*, 415 F.3d 1303, 1312–19 (Fed. Cir. 2005) (en banc).

10       Claim construction begins with the claim language.  *See Vitronics Corp. v. Conceptronic,*

11   *Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("we look to the words of the claims themselves . . . to

12   define the scope of the patented invention").  Claim terms "are generally given their ordinary and

13   customary meaning" from the perspective of a person having ordinary skill in the art (a

14   "PHOSITA").  *Phillips*, 415 F.3d at 1313–14; *see also Merck & Co. v. Teva Pharms. USA, Inc.*,

15   395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of

16   the claim is preferred over one that does not do so.").  Claims must be read in view of the

17   specification.  *Markman*, 52 F.3d at 979.  However, the specification cannot be used to rewrite a

18   claim or to import claim limitations that are not part of a claim.  *See SuperGuide Corp. v. DirecTV*

19   *Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("For example, a particular embodiment

20   appearing in the written description may not be read into a claim when the claim language is

21   broader than the embodiment.").  Moreover, while extrinsic evidence may be helpful in claim

22   construction, courts must discount expert testimony that is "clearly at odds with the claim

23   construction mandated" by the intrinsic record.  *Phillips*, 415 F.3d at 1318.

24       Here, the Court previously adopted the parties' construction of certain terms in Claim 40.

25   ECF No. 76.  Under the stipulated claim construction order, the following constructions apply in

26   these proceedings:

27           'extend through':  in the context of element A 'extend[ing] through'
             element B, 'extend through' means 'element A extends into one side
28           and out the other side of element B.'

*United States District Court*
*Northern District of California*

8

1

2
> 'configured to extend through the drywall':  in the context of an
> 'extension portion . . . configured to extend through the drywall,'
> 'configured to extend through the drywall' means (or requires
> structurally) 'an extension portion extending from the channel-shaped
> portion towards the connection portion and defining a space to receive
> drywall.'

3

4

5
> 'extending from': in the context of element B extending from element
> A, 'extending from' means 'the beginning of element B's extension
> is on element A.'

6

7
*Id.* at 2:21–3:2.  In that claim construction order, the parties stipulated that they had "not otherwise

8  identified any additional claim terms or phrases requiring construction."  *Id.* at 2:19–20.  The

9  parties' instant motions present issues of claim construction.  In its Opposition to Plaintiffs'

10  Motion for Summary Judgment, Simpson states:  "Where parties do not seek construction of a

11  term, the words are given their ordinary and customary meaning" from the perspective of a

12  PHOSITA.  Def.'s Oppo. at 10 n.1 (citing *Phillips*, 415 F.3d at 1312–13).  Plaintiffs seemingly

13  agree with this position.  *See* Pls.' Reply at 10:1–10 (stating that experts are not required to

14  "define or explicitly state the meaning of these terms . . . that are not disputed").  "[A] district

15  court may engage in claim construction during various phases of litigation, not just in a *Markman*

16  order."  *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006).  The

17  Court therefore addresses each issue of claim construction below.

18
### IV.    MOTION IN LIMINE

19          Simpson moves to exclude expert opinion and related testimony from Plaintiffs' expert

20  witness, Dr. Reynaud Serrette, under Rule 702 and *Daubert*.  ECF No. 148.  Simpson argues that

21  Dr. Serrette's opinions are inadmissible because Dr. Serrette is unqualified to provide the

22  opinions, and the opinions are irrelevant and unreliable.  Def.'s Mot. Lim. at 1:7–9.

23
### A.    Legal Standard

24          Motions *in limine* are a "procedural mechanism to limit in advance testimony or evidence

25  in a particular area."  *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  Like other

26  pretrial motions, motions *in limine* are "useful tools to resolve issues which would otherwise

27  clutter up the trial."  *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

28  Accordingly, "a ruling on a motion *in limine* is essentially a preliminary opinion that falls entirely

United States District Court
Northern District of California

within the discretion of the district court." *Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (explaining that a court may rule *in limine* "pursuant to the district court's inherent authority to manage the course of trials"). However, "[a] motion *in limine* is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013).

In many instances, rulings "should be deferred until trial, so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016). For example, in order to exclude evidence on a motion *in limine*, "the evidence must be inadmissible on all potential grounds." *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014). Thus, denial of a motion *in limine* to exclude certain evidence does not mean that all evidence contemplated by the motion will be admitted, only that the court is unable to make a comprehensive ruling in advance of trial. *Id.* Moreover, even if a district court does rule *in limine*, the court may "change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." *City of Pomona*, 866 F.3d at 1070; *see also Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial.").

## B.     Federal Rule of Evidence 702 and *Daubert*

The Federal Rules of Evidence allow a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *accord Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). The proponent of expert testimony must demonstrate by a preponderance of evidence "that

the proffered testimony meets the admissibility requirements" of Rule 702.  Fed. R. Evid. 702, Adv. Comm. Notes (2023).

Rule 702 "contemplates a *broad conception* of expert qualifications."  *Hangarter*, 373 F.3d at 1018 (emphasis in original).  Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise.  *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702.  Relevance, in turn "means that the evidence will assist the trier of fact to understand or determine a fact in issue."  *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (quotation omitted).  Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline."  *Primiano*, 598 F.3d at 565.  To ensure reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance."  *Id*. at 564 (alteration added).  In this role, the "judge is a gatekeeper, not a fact finder," and the "gate [should] not be closed to [a] relevant opinion offered with sufficient foundation by one qualified to give it."  *Id*. at 568 (alteration added) (cleaned up).

The purpose of the Court's gatekeeping role is to ensure that expert testimony is "properly grounded, well-reasoned and not speculative."  Fed. R. Evid. 702, Adv. Comm. Notes (2000) (quoting *Daubert*, 509 U.S. at 595).  However, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Teradata Corp. v. SAP SE*, 124 F.4th 555, 566 (9th Cir. 2024) (quoting *Primiano*, 598 F.3d at 564).  Thus, "[a]fter an expert establishes admissibility to the judge's satisfaction, challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge."  *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014); *see also* Fed. R. Evid. 702, Adv. Comm. Notes (2000) ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.  *Daubert* did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'") (quotation omitted).

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.    **Discussion**

Simpson moves to exclude portions of the Rebuttal Expert Report of Dr. Serrette (ECF No. 147-2) ("Serrette Validity Report").  Specifically, Simpson seeks exclusion of Dr. Serrette's opinions regarding (1) Claim 40 and the prior art; (2) the nexus between the claimed invention and secondary considerations; (3) commercial success; and (4) other secondary considerations.  Def.'s Mot. Lim. at 25:18–21.[5]  In the alternative, Simpson requests that the Court exclude at least eighteen paragraphs "that directly contradict the Federal Circuit decision."  *Id.* at 11:17–19.[6]

In sum, the Court finds that Dr. Serrette's opinions regarding the interpretation of Claim 40 and its application to prior art with respect to a sheathing limitation are inadmissible, his opinions regarding factual findings made by the PTAB and Federal Circuit are admissible, his opinions regarding nexus are admissible, his opinions regarding commercial success are inadmissible, and his opinions regarding other secondary considerations are admissible.

Dr. Serrette holds a Ph.D. in Civil Engineering from Cornell University and is a Professor of Civil Engineering at Santa Clara University.  Serrette Infringement Report ¶ 4.  Since 1987, Dr. Serrette has "been involved in cold-formed steel, structural (hot-rolled) steel, timber, and concrete research."  *Id.*  His "research encompasses structural members, structural connectors, diaphragms, shear walls, and fasteners – essentially the range of building components."  *Id.*  In the past ten years, Dr. Serrette has published "several papers on structural design in the US, Europe and Asia."  *Id.*  The main focus of Dr. Serrette's work "is in the area of light frame building construction."  *Id.*  Simpson does not challenge that Dr. Serrette is qualified as an expert in structural engineering.  Def.'s Mot. Lim. at 3:7–14.  Nor does Simpson dispute that Dr. Serrette qualifies as a PHOSITA regarding the '510 Patent.  Pls.' Oppo., Mot. Lim. at 16:8–10.

_____

[5] Simpson moves to exclude the following paragraphs in the Serrette Validity Report:  47, 72–312, 315–33, 334–43, 347–51, 353, 355–56, 357, 359–63, 365, 366–69, 372–73, 374–87, 388–91, 394, 402–10, and 412.

[6] Simpson moves to exclude, at a minimum, the following paragraphs in the Serrette Validity Report:  47, 74, 81, 96–99, 101, 114, 243, 251–53, 281–83, 305, and 307.

1          **1.      Opinions Regarding Claim 40 and The Prior Art**

2          Simpson argues that Dr. Serrette's opinions regarding interpretation of Claim 40 and the

3   prior art-based grounds of invalidity asserted by Simpson are (1) irrelevant; and (2) inadmissible

4   because they contradict "controlling law of the case."  Def.'s Mot. Lim. at 1:10–14.[7]

5          Dr. Serrette opines on the validity of Claim 40 and responds to the reports of Simpson's

6   retained expert witnesses.  Serrette Validity Report ¶¶ 1, 7.  Dr. Serrette provides testimony

7   evaluating Simpson's asserted prior art, assessing whether the prior art discloses claim limitations

8   in Claim 40, and assessing whether the prior art and secondary considerations render Claim 40

9   nonobvious to a PHOSITA.  *Id.* at ¶¶ 72–99, 153–239, 240–413.

10         As a preliminary matter, Dr. Serrette's opinions regarding the interpretation of Claim 40

11  and the assessment of elements contained in asserted prior art references are relevant to the

12  question of whether Simpson's asserted prior art anticipates or renders obvious Claim 40.  *See*

13  Fed. R. Evid. 401 ("Evidence is relevant if:  (a) it has any tendency to make a fact more or less

14  probable than it would be without the evidence; and (b) the fact is of consequence in determining

15  the action.").

16         Simpson asserts that because the Federal Circuit's decision affirming the PTAB's PGR

17  findings is "controlling on this Court," the portions of the Serrette Report "that run counter to the

18  Federal Circuit decision should be excluded."  Def.'s Mot. Lim. at 8:25–9:26.  Simpson argues

19  that "Dr. Serrette's opinion that Claim 40 requires a hanger intended for a two-hour 'fire wall'

20  incorporating two sheets of 5/8 inch thick drywall contradicts the Federal Circuit's ruling that the

21  '510 Patent claims, including Claim 40, are 'apparatus claims that only cover the hanger itself, not

22  the sheathing [e.g., drywall],'" and that this infects Dr. Serrette's entire analysis of Claim 40 and

23  the prior art references.  *Id.* at 9:27–10:23 (alteration in original), 11:11–19.  Plaintiffs respond

24  that Dr. Serrette is only "describing the preferred embodiment of claim 40," and that Simpson

25  "arbitrarily selected paragraphs" to exclude.  Pls.' Oppo., Mot. Lim. at 8:9–9:11.

26         Simpson further argues that any of Dr. Serrette's opinions that embody arguments rejected

27

28  ───────────────
    [7] Simpson moves to exclude paragraphs 72–312 in the Serrette Validity Report.  Def.'s Mot. Lim.
    at 11:11–17.

United States District Court
Northern District of California

by the Federal Circuit should be excluded.  Def.'s Mot. Lim. at 10:24–11:10.  Plaintiffs contend that Dr. Serrette is not precluded from disagreeing with the PTAB's findings or the Federal Circuit's decision regarding the '510 Patent.[8]  Pls.' Oppo., Mot. Lim. at 6:11–7:5.

Simpson's proposition that the Federal Circuit's decision (affirming the PTAB's PGR findings) is binding on this Court lacks legal support.  Simpson's cited cases on this issue are inapposite because they do not involve district court cases that are parallel to cases appealed from the PTAB to the Federal Circuit.  *See* Def.'s Mot. Lim. at 9:3–26 (citing *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 2571332, at *6–7 (N.D. Cal. June 30, 2012); *AMS Sensors USA Inc. v. Renesas Elecs. Am. Inc.*, No. 4:08-CV-00451, 2021 WL 765227, at *4 (E.D. Tex. Feb. 26, 2021); *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09CV01252 ERW, 2018 WL 6110929, at *3–4 (E.D. Mo. Nov. 21, 2018)).  Nor do those cases involve expert testimony that concerns the PTAB's factual findings regarding claims in the patent-in-suit.  Indeed, the Federal Circuit has held that experts are not precluded from offering testimony on patent validity that conflicts with the PTAB's factual findings.  *See Kroy IP Holdings, LLC v. Groupon, Inc.*, 127 F.4th 1376, 1381 (Fed. Cir. 2025) ("[W]hen a district court would necessarily rely on the Board's fact findings, and those facts have only been proven in a prior proceeding under a lower burden of proof than what is required in district court, collateral estoppel does not apply.").  Collateral estoppel only applies to bar a patentee from asserting a claim in district court that was invalidated by the PTAB and affirmed by the Federal Circuit.  *Id.*  Here, Dr. Serrette opines on the validity of Claim 40 which was found patentable by the PTAB.  ECF No. 38.  Therefore, in this case, Dr. Serrette's opinions cannot be excluded merely on the basis that they conflict with the PTAB's factual findings regarding claims in the '510 Patent.

However, Simpson is correct that Dr. Serrette's opinions regarding the construction of Claim 40 are inadmissible if they are contrary to general principles of patent law.  *See Apple,* 2012 WL 2571332, at *6 (holding that because expert testimony on patent damages "is contrary to law,

---

[8] Plaintiffs state that (1) because the Court ruled that Simpson is estopped from asserting Cullen, Dr. Serrette would not need to offer opinions regarding Cullen; and (2) if Simpson is not asserting Chapin, Dr. Serrette would not need to offer opinions regarding Chapin.  Pls.' Oppo., Mot. Lim. at 7 n.1.

it is unreliable under FRE 702 and *Daubert* and unduly prejudicial under FRE 403").  In his report, Dr. Serrette states:  "In the preferred embodiment, *as claimed in claim 40*, the extension portion spaces the channel-shaped portion and the connection portion apart by a distance sized specifically for receiving two sheets/layers of 5/8 inch drywall between the channel-shaped portion and the connection portion."  Serrette Validity Report ¶ 47 (citing '510 Patent at 12:30–35) (emphasis added).  Further, Dr. Serrette refers to "sheathing," "firewalls," and "fire resistance" in his opinions regarding the claim limitations of Claim 40, his analysis of Simpson's asserted prior art references, and his rebuttal to Simpson's expert.  *Id.* at ¶¶ 74, 78, 81, 101, 114, 140, 144, 152, 243, 244.  Collectively, this testimony indicates that Dr. Serrette considers Claim 40 to include a fire-resistant sheathing limitation—he states that this limitation is "claimed in claim 40." *Id.* at ¶ 47.

    Dr. Serrette's opinions that read a sheathing limitation into Claim 40 run contrary to general principles of claim construction.  Importantly, Dr. Serrette cites to a claim invalidated by the PTAB for his conclusion that Claim 40 contains a sheathing limitation.  *Id.* (citing '510 Patent at 12:30–35).  The patent language cited by Dr. Serrette pertains to Claim 1 of the '510 Patent, a claim found unpatentable by the PTAB.  '510 Patent at col. 12, ln. 30–35[9]; *see* ECF Nos. 38

---

[9] Claim 1 of the '510 Patent, invalidated by the PTAB, recites:

> A hanger for connecting a structural component to a wall adapted to have sheathing mounted thereon, the hanger comprising:
>
> a channel-shaped portion configured to receive the structural component, the channel-shaped portion including a base sized and shaped for receiving an end of the structural component thereon to support the structural component, and side panels extending upward from the base generally perpendicular to the base, the side panels having rearward edges lying in a rear edge plane;
>
> an extension portion extending from the channel-shaped portion and configured to extend through the sheathing; and
>
> a connection portion including a top flange configured for attachment to a top surface of a top plate of the wall, the connection portion further including a back flange extending from an edge of the top flange in a direction toward a plane of the base of the channel-shaped portion, the back flange having a front surface lying in a back flange plane, the extension portion spacing the side panels from the back

1    (stating PTAB invalidated Claim 1), 48 (stating Federal Circuit affirmed invalidation of Claim 1).

2    The fact that Dr. Serrette incorporated limitations from another claim into his analyses involving

3    the limitations in Claim 40 renders these opinions inadmissible because they violate patent law.

4    *SuperGuide*, 358 F.3d at 875.

5            Moreover, the Court can engage in claim construction at any time.  *Conoco*, 460 F.3d at

6    1359.  And the Court agrees with the Federal Circuit that it is improper to "artificially narrow

7    [Claim 40] to require fire-resistant sheathing with a cutout."  *See* Mauch Decl., Ex. A, at 12

8    (Federal Circuit decision) (ECF No. 144-1) (alteration added).  The Specification of the '510

9    Patent teaches that *some embodiments* contain spacing for fire resistant sheathing; however, Claim

10   40 is devoid of any language directed to particular sheathing and only discloses a spacing

11   limitation without defined measurements.  *See* '510 Patent at col. 4, ln. 15–19 ("In one

12   embodiment, the fire retardant sheathing is gypsum board, such as two layers of 5/8" gypsum

13   board mounted on each side of the wall . . . although other configurations of fire retardant

14   sheathing are within the scope of the present invention."); PGR Certificate at col. 1, ln. 7–col. 2,

15   ln. 12.  "[A]particular embodiment appearing in the written description may not be read into a

16   claim when the claim language is broader than the embodiment."  *SuperGuide*, 358 F.3d at 875.

17   Therefore, the Court finds that Dr. Serrette's opinions that Claim 40 contains a sheathing

18   limitation are inadmissible because they are contrary to patent law.

19           Accordingly, the Court **GRANTS** Simpson's motion to exclude Dr. Serrette's opinions

20   and related testimony that state or rely on the opinion that Claim 40 contains a sheathing

21   limitation, and excludes paragraphs 47, 74, 78, 81, 101, 114, 140, 144, 152, and 243–44 in the

22   Serrette Validity Report.  The Court **DENIES** Simpson's motion to exclude Dr. Serrette's

23   opinions that conflict with factual findings of the PTAB or the Federal Circuit.

24   ──────────────────

25                    flange plane by a distance sized large enough to permit two layers of
                      5/8 inch thick sheathing to be received between the rear edge plane
26                    and the back flange plane, but too small to permit three layers of 5/8
                      inch thick sheathing to be received between the rear edge plane and
27                    the back flange plane.

28   '510 Patent col. 12, ln. 10–36.

### 2.    Opinions Regarding Nexus Between The Claimed Invention and Secondary Considerations

Simpson argues that Dr. Serrette's opinions regarding the nexus between the claimed invention and Plaintiffs' proffered evidence of secondary considerations are inadmissible because they are (1) legal conclusions; and (2) premised on an unreliable methodology.  Def.'s Mot. Lim. at 1:15–18.[10]

Dr. Serrette opines that "there is a nexus between the merits of the claimed invention and the objective evidence."  Serrette Validity Report ¶ 316.  Dr. Serrette considered Simpson's DG series hangers and DGF series hangers in forming this opinion.  *Id.* at ¶¶ 318–19, 326–27.  Dr. Serrette explains that he mapped the limitations of Claim 40 to the Accused Products and to MiTek's FWH Series hanger.  *Id.* at ¶ 319.  Dr. Serrette explains the technical aspects of the device claimed in Claim 40 and opines that the claimed configuration was a significant improvement from the way conventional hangers worked.  *Id.* at ¶¶ 322–24.  Finally, Dr. Serrette responds to Simpson's experts' testimony regarding commercial success and opines that the claimed configuration allows for the benefits provided by the product.  *Id.* at ¶¶ 328–33.

Simpson first argues that Dr. Serrette's opinions on nexus are legal conclusions, and that "[i]t is not the proper role of an expert to determine whether one party has qualified for a legal presumption and whether the opposing party has or has not rebutted that presumption."  Def.'s Mot. Lim. at 11:22–12:14.  Plaintiffs contend that because the question of "whether a presumption of nexus is appropriate in a given case is a question of fact," Dr. Serrette is permitted to opine on this ultimate issue of fact.  Pls.' Oppo., Mot. Lim. at 10:4–21.  Plaintiffs assert that Dr. Serrette's opinion on whether products embody the claimed features of Claim 40 and are coextensive with these features, explanation of the technical aspects of the claimed configuration, and opinion that this configuration allows for the benefits provided by the product are all appropriate.  *Id.* at 11:8–12:23.

Secondary considerations are only accorded substantial weight in an obviousness analysis when they have a "nexus" to the claims, meaning "a legally and factually sufficient connection

---

[10] Simpson moves to exclude paragraphs 315–33 in the Serrette Validity Report.  Def.'s Mot. Lim. at 14:12–13.

United States District Court
Northern District of California

1    between the evidence and the patented invention." *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d

2    1366, 1373 (Fed. Cir. 2019) (cleaned up).  A patentee can establish a nexus in two ways.  First, "a

3    rebuttable presumption of nexus between the asserted evidence of secondary considerations and a

4    patent claim" exists "when the patentee shows that the asserted objective evidence is tied to a

5    specific product and that product embodies the claimed features, and is coextensive with them."

6    *Id.* (cleaned up).  "Whether a product is coextensive with the patented invention, and therefore

7    whether a presumption of nexus is appropriate in a given case, is a question of fact."  *Id.*  Second,

8    a patentee can "prove nexus by showing that the evidence of secondary considerations is the direct

9    result of the unique characteristics of the claimed invention."  *Id.* at 1373–74 (cleaned up).

10          The Court finds that Dr. Serrette's opinions regarding nexus are not impermissible legal

11    conclusions because they pertain to an issue of fact and not to an issue of law.  *See Hangarter*, 373

12    F.3d at 1016 (citing Fed. R. Evid. 704(a)) ("expert testimony that is otherwise admissible is not

13    objectionable because it embraces an ultimate issue to be decided by the trier of fact").  Dr.

14    Serrette opines that "there is a presumption of nexus between the merits of the claimed invention

15    and the objective evidence in this case *because the objective evidence* is tied to MiTek's FWH

16    series hanger and Simpson's DG/DGB/DGH and DGF/DGHF/DGBF series hangers *and those*

17    *products embody the invention and are coextensive with it*."  Serrette Validity Report ¶ 326

18    (emphasis added).  Dr. Serrette then opines on an issue of fact—whether the evidence of

19    secondary considerations establishes that they are tied to specific products that are coextensive

20    with the claimed invention.  *Id.* at ¶¶ 318–26.  In his report, Dr. Serrette includes a section titled,

21    "Simpson Failed to Rebut Presumption of Nexus."  *Id.* at ¶¶ 328–33.  While this heading may be

22    awkwardly worded, the opinions in this section pertain to whether the benefits of Plaintiffs'

23    products are tied to the patented features of the claimed invention.  These opinions also

24    appropriately address the nexus issue.  However, to Simpson's point, Dr. Serrette cannot testify

25    that Simpson has conclusively failed to rebut any presumption of nexus should the parties proceed

26    to trial.

27          Simpson next argues that even if Dr. Serrette could opine on whether a nexus exists, Dr.

28    Serrette's methodology is unreliable because he "did not consider all relevant products in reaching

1    his opinion." Def.'s Mot. Lim. at 13:1–14:11.  According to Simpson, because Dr. Serrette "did

2    not perform any claim mapping of, or otherwise consider, Simpson's DGT series hangers," his

3    opinion is unreliable. *Id.* Simpson asserts that "[b]ecause the DGT hangers allow for the

4    purported benefit of installation before drywall but do not practice Claim 40, they directly

5    contradict Serrette's opinion that the purported benefit of installation before drywall is coextensive

6    with Claim 40." *Id.* at 14:2–4.  Plaintiffs contend that Dr. Serrette's "methodology is reliable

7    because it is based on his knowledge and expertise in the relevant discipline," and that the fact that

8    Dr. Serrette used a different methodology than Simpson's expert is not a basis for excluding

9    expert testimony. Pls.' Oppo., Mot. Lim. at 12:24–13:4.  According to Plaintiffs, Simpson's

10   arguments attack the "weight and credibility" of Dr. Serrette's opinions and constitute matters that

11   must be addressed on cross-examination. *Id.* at 13:4–16.

12            The Court finds that Dr. Serrette's opinions regarding nexus are admissible because they

13   are based on appropriate expertise and methodology. *Primiano*, 598 F.3d at 565.  Simpson's DGT

14   series hangers are not part of the Accused Products; therefore, Dr. Serrette's failure to consider the

15   DGT series hangers does not render his opinions unreliable. *See* FAC ¶¶ 28, 54.  Dr. Serrette

16   describes the configurations of the claimed invention and the Accused Products and explains their

17   relationship to purported benefits, drawing upon his own experience as a civil engineer.  Serrette

18   Validity Report ¶¶ 318–26.  Because Simpson's DGT series hangers do not practice the claimed

19   configuration in Claim 40, they are not relevant to Dr. Serrette's opinions focused specifically on

20   the claimed configuration.  Dr. Serrette opined that the claimed configuration is coextensive with

21   certain benefits—this is not tantamount to opining that the claimed configuration is the *only* way

22   to achieve those benefits.  Thus, Simpson's argument that Dr. Serrette's methodology is unreliable

23   because he failed "to consider relevant and controverting evidence that he was aware of" falls flat.

24   Def.'s Reply at 14:5–8; *see id.* at 14:11–14 ("If an expert opined that all humans with brown hair

25   have brown eyes but failed to consider evidence of humans with brown hair and blue eyes, that

26   expert's opinion would undeniably be based on an unreliable methodology.  That is what Dr.

27   Serrette has done here.").  In sum, Simpson's arguments based on its evidence that there was

28   another way to achieve the same benefits as the claimed configuration go to the weight and

United States District Court
Northern District of California

19

1    credibility of Dr. Serrette's testimony; these arguments are best addressed on cross-examination,

2    not through exclusion.  *Pyramid Techs.*, 752 F.3d at 814.

3         Accordingly, the Court **DENIES** Simpson's motion to exclude Dr. Serrette's opinions

4    regarding nexus.

5         **3.    Opinions Regarding Commercial Success**

6         Simpson argues that Dr. Serrette's opinions regarding commercial success are inadmissible

7    because (1) Dr. Serrette is not qualified to proffer expert opinions on market demand; (2) the

8    opinions do not qualify as expert testimony; and (3) the opinions are based on unreliable

9    methodologies.  Def.'s Mot. Lim. at 1:19–23.[11]

10        Dr. Serrette opines that the commercial success of MiTek's FWH Series hangers and the

11   Accused Products "was the result of embodying the configuration claimed in claim 40 of the '510

12   Patent."  Serrette Validity Report ¶ 356.  In forming this opinion, Dr. Serrette considered the

13   structural connector market, firewall hangers within the market, performance and development of

14   the parties' hangers, benefits of Plaintiffs' hangers, and requests from Simpson's customers

15   regarding hangers.  *Id.* at ¶¶ 336–55.  Dr. Serrette opines on the state of the structural engineering

16   and firewall hanger market, the development and features of the parties' products, and the benefits

17   of the parties' products.  *Id.* at ¶¶ 334–56.  It is undisputed that Dr. Serrette is not qualified as an

18   expert in economics.  Def.'s Mot. Lim. at 14:25–15:17; Pls.' Oppo., Mot. Lim. at 17:12–18.

19   Moreover, Dr. Serrette does not have "any training or experience in economic analysis."

20   Declaration of Joseph V. Mauch in Support of Simpson's Motion in Limine, Ex. E (Deposition of

21   Dr. Serrette) at 236:15–20 (ECF No. 148-6).

22        Simpson argues that Dr. Serrette is not qualified to opine on "economic issues such as

23   market analysis and drivers of demand."  Def.'s Mot. Lim. at 14:25–26.  Plaintiffs contend that

24   evidence of commercial success can be provided by persons other than economists and that Dr.

25   Serrette's "opinions are technical in nature and rely on Dr. Serrette's personal knowledge, skill,

26   experience, training, and education as a civil engineer."  Pls.' Oppo., Mot. Lim. at 15:4–24.

27   _____

28   [11] Simpson moves to exclude paragraphs 334–43, 347–51, 353, and 355–56 in the Serrette
     Validity Report.  Def.'s Mot. Lim. at 19:25–27.

United States District Court
Northern District of California

United States District Court
Northern District of California

1       Dr. Serrette is not automatically precluded from opining on commercial success merely

2   because he is not an economist.  Rule 702 "contemplates a *broad conception* of expert

3   qualifications."  *Hangarter*, 373 F.3d at 1018 (emphasis in original).  That said, while a witness

4   "can qualify as an expert through practical experience in a particular field," the expert's

5   experience must relate to issues in dispute such that the expertise would be helpful to the trier of

6   fact.  *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991).  For example, courts in

7   this district have found that technical experts with no training in economics are qualified to opine

8   on aspects of the commercial success inquiry, like whether a product embodies a claimed

9   invention, whether a product is coextensive with a claimed invention, and what performance value

10  is provided by a claimed invention.  *Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597,

11  603–06 (N.D. Cal. 2008).  However, such experts are not qualified to opine on certain factors that

12  influence commercial success, like standardization, import laws, and contractual relationships.  *Id.*

13  at 604.

14      The Court finds that Dr. Serrette is not qualified to opine on the aspects of commercial

15  success identified by Simpson.  Dr. Serrette opines as to his understanding of market conditions,

16  market and consumer demand, drivers of demand, and the relative success or failure of products in

17  the market, but it is unclear how his experience qualifies him to testify as an expert in topics

18  related to economic issues.  Plaintiffs barely argue otherwise—they do not explain *how* Dr.

19  Serrette's technical expertise as an engineer qualifies him to analyze evidence related to markets

20  and demand or to rebut testimony from Simson's expert who is an economist.  However, Dr.

21  Serrette is qualified to opine on whether a product embodies a claimed invention, whether a

22  product is coextensive with a claimed invention, and what performance value is provided by a

23  claimed invention.  Simpson does not seek to exclude Dr. Serrette's opinions on these aspects of

24  the commercial success inquiry; thus, its request is not overbroad.

25      Accordingly, the Court **GRANTS** Simpson's motion to exclude Dr. Serrette's opinions

26  regarding commercial success.  Given the Court's ruling, it need not address Simpson's remaining

27  arguments regarding these opinions.

28

21

1

**4.     Opinions Regarding Other Secondary Considerations**

2      Simpson argues that Dr. Serrette's opinions regarding other secondary considerations are

3   (1) irrelevant; and (2) unreliable because they are not based on Dr. Serrette's structural

4   engineering expertise but rather are a recitation of evidence provided to him.  Def.'s Mot. Lim. at

5   1:24–27.[12]  Overall, Simpson moves to exclude Dr. Serrette's opinions regarding long-felt but

6   unresolved need in the industry, failure of others to develop the invention, industry skepticism

7   about the invention, praise attributable to the invention, and copying of the invention by Simpson.

8   *Id.* at 20:1–25:16.

9      Dr. Serrette opines that the claimed invention solved an unmet need in the structural

10  connectors industry for a firewall hanger that could be used "without compromising the fire rating

11  of the firewall assemblies and doing so while allowing the drywall to be installed after the hanger

12  was installed."  Serrette Validity Report ¶ 365.  Dr. Serrette opines that Simpson tried but failed to

13  solve this unmet industry need.  *Id.* at ¶ 373.  Dr. Serrette opines that persons in the industry would

14  have been skeptical of the claimed configuration and its successful use in firewalls.  *Id.* at ¶¶ 375,

15  387.  Finally, Dr. Serrette opines that industry praise of the FWH Series hangers was attributable

16  to the claimed invention, and that Simpson copied inventive aspects of the claimed invention.  *Id.*

17  at ¶¶ 394, 410–12

18      As a preliminary matter, Dr. Serrette's opinions regarding secondary considerations are

19  relevant to the question of whether Claim 40 was obvious over the prior art asserted by Simpson.

20  *See* Fed. R. Evid. 401.

21      Simpson argues that Dr. Serrette's opinions on secondary considerations are not based on

22  his technical expertise but are instead based on unreliable principles and methodologies.  Def.'s

23  Mot. Lim. at 20:1–25:16.  Overall, Plaintiffs contend that Simpson's arguments "highlight[] Dr.

24  Serrette's high-level conclusions as opposed to his actual analysis."  Pls.' Oppo., Mot. Lim. at

25  14:21–22.

26

27  ───────────────

28  [12] Simpson moves to exclude the following paragraphs in the Serrette Validity Report:  357, 359–63, 365, 366–69, 372–73, 374–87, 388–91, 394, 402–10, and 412.  Def.'s Mot. Lim. at 21:20–22, 22:18–19, 23:15–17, 24:13–14, 25:15–16.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court finds that Dr. Serrette's opinions regarding the above secondary considerations

2 are admissible because they are based on appropriate expertise and methodology. *Primiano*, 598

3 F.3d at 565. To be sure, "[a] court may exclude an expert opinion on secondary considerations for

4 lack of reliable methodology where the expert performs no analysis." *Mformation Techs., Inc. v.*

5 *Rsch. in Motion Ltd.*, No. C 08-04990 JW, 2012 WL 1142537, at *5 (N.D. Cal. Mar. 29, 2012)

6 (citing *Rambus*, 254 F.R.D. at 605). But this is not such a case. First, for each factor, Dr. Serrette

7 explained the evidence that he considered in formulating his conclusions. Serrette Validity Report

8 ¶¶ 357–64, 367–72, 376–86, 389–93, 403–10. Second, Dr. Serrette's opinions have "a reliable

9 basis in the knowledge and experience of the relevant discipline," structural engineering.

10 *Primiano*, 598 F.3d at 565. For each secondary consideration, Dr. Serrette's analysis ties in

11 directly with his technical expertise as a civil engineer—his opinions include, *inter alia*, analysis

12 of the Accused Products and how those products posed challenges in the structural connectors

13 industry. *E.g.,* Serrette Validity Report ¶¶ 370–71. Contrary to Simpson's argument, Dr. Serrette

14 is not required to "discuss[] how his own specialized structural engineering knowledge was used

15 in interpreting that evidence and ultimately formulating the opinion." Pls.' Oppo., Mot. Lim. at

16 21:2-4. Plaintiffs demonstrated that Dr. Serrette's education and experience in the structural

17 connectors industry qualifies him to analyze these secondary considerations. *See* Pls.' Oppo.,

18 Mot. Lim. at 2:9–3:17 (citing Serrette Infringement Report ¶ 4; ECF No. 148-4 (Dr. Serrette's

19 Curriculum Vitae)). Simpson cannot ignore Dr. Serrette's qualifications, including his 38 years of

20 experience in the field, as Dr. Serrette's opinions must be viewed through this lens. *See, e.g.,*

21 *Mformation Techs.*, 2012 WL 1142537, at *5 (holding "[a]lthough [the expert] does not explain

22 his analysis at length, in light of his education and experience in the field, the Court finds that his

23 opinion as to the long-felt need for this technology is nonetheless helpful to the jury").

24    Accordingly, the Court **DENIES** Simpson's motion to exclude Dr. Serrette's opinions

25 regarding these secondary considerations.

26 **D.    Conclusion**

27    For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART**

28 Simpson's Motion in Limine.

United States District Court
Northern District of California

## V.    MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs request that the Court grant them summary judgment that Simpson infringed Claim 40 of the '510 Patent.  Pls.' MSJ at 1:20–23.  Simpson argues that summary judgment is precluded because Plaintiffs fail to show that all limitations in Claim 40 are present in the Accused Products.  Def.'s Oppo. at 1:7–28.

Simpson requests that the Court grant it summary judgment that Claim 40 of the '510 Patent is invalid because it is anticipated and rendered obvious by prior art.  Def.'s MSJ at 9:28, 19:21–20:2.  Plaintiffs argue that summary judgment is precluded because Simpson cannot assert the prior art references on summary judgment, and multiple issues of material fact exist that must be resolved by a jury.  Pls.' Oppo. at 1:1–2:3.

In sum, the Court concludes that Plaintiffs have failed to make a *prima facie* case of patent infringement because they do not provide evidence that all limitations in Claim 40 are present in the Accused Products.  Therefore, summary judgment for Plaintiffs on their patent infringement claim is not warranted.  The Court further concludes that disputes of material fact exist regarding whether Claim 40 was anticipated and rendered obvious by prior art.  Therefore, summary judgment for Simpson on its patent invalidity counterclaim is not warranted.

### A.    Legal Standard

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving

1    party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However, it is not the

2    task of the Court "to scour the record in search of a genuine issue of triable fact."  *Keenan v.*

3    *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden "to identify with

4    reasonable particularity the evidence that precludes summary judgment."  *Id.*; *see also Cafasso,*

5    *U.S. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (noting the nonmoving

6    party "must set forth non-speculative evidence of specific facts, not sweeping conclusory

7    allegations") (cleaned up).  Thus, "[t]he district court need not examine the entire file for evidence

8    establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with

9    adequate references so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*,

10    237 F.3d 1026, 1031 (9th Cir. 2001); *see also Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*,

11    626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.")

12    (cleaned up).

13      "While the evidence presented at the summary judgment stage does not yet need to be in a

14    form that would be admissible at trial, the proponent must set out facts that it will be able to prove

15    through admissible evidence."  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010)

16    (citing FED. R. CIV. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must

17    be made on personal knowledge, set out facts that would be admissible in evidence, and show that

18    the affiant or declarant is competent to testify on the matters stated.")).  If the nonmoving party

19    fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not

20    significantly probative, summary judgment may be granted."  *Anderson,* 477 U.S. at 249–50

21    (cleaned up).

22    **B.**  **Plaintiffs' Motion For Patent Infringement**

23      Plaintiffs argue that summary judgment in their favor is appropriate on their patent

24    infringement claim because Simpson's DGF Series literally meets each limitation of Claim 40 of

25    the '510 Patent.  Pls.' MSJ at 1:20–23.  Simpson contends that summary judgment is precluded

26    because (1) Plaintiffs' separate statement does not set forth where each limitation of Claim 40 is

27    contained in each of the Accused Products; (2) both Plaintiffs and their expert apply the wrong

28    claim limitation to the Accused Products; and (3) Plaintiffs provide insufficient evidence of how

United States District Court
Northern District of California

1   the skewed and offset hangers infringe Claim 40. Def.'s Oppo. at 1:7–28. Simpson further

2   contends that it "has no obligation to rebut Plaintiffs' attempted factual showing of infringement"

3   because Plaintiffs failed to shift the burden to Simpson. *Id.* at 2:3–6.

4       The Patent Act states:

5           whoever without authority makes, uses, offers to sell, or sells any
            patented invention, within the United States or imports into the United
6           States any patented invention during the term of the patent therefor,
            infringes the patent.
7

8   35 U.S.C. § 271(a). Direct patent infringement can occur literally or by equivalence—literal

9   infringement requires that the accused product contain each and every limitation of the asserted

10  patent claim. *Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

11      "A literal patent infringement analysis involves two steps: the proper construction of the

12  asserted claim and a determination as to whether the accused method or product infringes the

13  asserted claim as properly construed." *Vitronics*, 90 F.3d at 1581–82. Claim construction is a

14  question of law. *Markman*, 52 F.3d at 979. Whether a product infringes is a question of fact.

15  *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016). But under a claim of

16  literal infringement, "[i]f any claim limitation is absent from the accused device, there is no

17  literal infringement as a matter of law." *Bayer*, 212 F.3d at 1247.

18      The patentee bears the burden of proving by a preponderance of evidence that an accused

19  product reads on a patent claim. *Id.*; *see L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed.

20  Cir. 2006) (recognizing that the party seeking summary judgment of infringement "must make a

21  prima facie showing of infringement as to each accused device before the burden shifts to the

22  accused infringer to offer contrary evidence"). "An infringement issue is properly decided upon

23  summary judgment when no reasonable jury could find that every limitation recited in the

24  properly construed claim either is or is not found in the accused device either literally or under the

25  doctrine of equivalents." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

26      As a threshold matter, Plaintiffs' emphasis on Simpson's failure to "articulate[] any theory

27  or argument that the DGF Series does not infringe on the '510 Patent" is misplaced. Pls.' MSJ at

28  1:19–23. An accused infringer is not required to proffer evidence that disproves infringement;

United States District Court
Northern District of California

26

instead, the accused infringer may defeat summary judgment by relying on a patentee's failure to meet its burden of proof. *L & W*, 471 F.3d at 1318. Therefore, Simpson is not required to present theories or evidence of non-infringement to defeat Plaintiffs' Motion for Summary Judgment.

### 1. The Evidence Does Not Demonstrate That All Limitations In Claim 40 Are Present In The Accused Products

Simpson argues that Plaintiffs failed to proffer sufficient evidence to support summary judgment because (1) Plaintiffs and their expert, Dr. Serrette, misstate a limitation in Claim 40 "so as to read out entirely elements of the limitation," and (2) Plaintiffs did not "offer evidence to support what constitutes the 'top plate of the wall' or a 'top surface of a top plate of the wall.'" Def.'s Oppo. at 8:24–9:3. Plaintiffs contend that their "paraphrasing" of this claim limitation is not dispositive because "[t]he only evidence in this case shows that the DGF Series hangers embody" this limitation. Pls.' Reply at 7:24–10:22.

Here, Plaintiffs only allege literal patent infringement and do not rely on the doctrine of equivalents. Pls.' MSJ at 1:20–23. Under their theory, Plaintiffs fail to make a *prima facie* showing of infringement because they do not provide evidence that each and every limitation in Claim 40 is present in the Accused Products. Both Plaintiffs' Motion for Summary Judgment and Dr. Serrette's Report discuss a purported claim limitation that reads: "a connection portion including a top flange configured for attachment to a top plate of the wall." Pls.' MSJ at 13:25–14:20; Serrette Infringement Report ¶¶ 48–51, 85–88, 123–26. However, this element in Claim 40 reads:

> a connection portion including a top flange configured for attachment **to a top surface of a top plate of the wall** and a back flange extending from an edge of the top flange, the back flange having a front surface lying in a back flange plane, the extension portion spacing the channel-shaped portion from the back flange plane by a distance sized large enough to permit the drywall to be received between the channel-shaped portion and the back flange plane

PGR Certificate at col. 1, ln. 7–col. 2, ln. 12 (emphasis added). Neither Plaintiffs nor their expert discuss the correct language in Claim 40 regarding this limitation. Nor do Plaintiffs offer an explanation for why the Court should accept that their altered claim language is tantamount to the actual claim language. The Court declines Plaintiffs' invitation to rewrite the claim language or

1    read out parts of the claim language in Claim 40.  *See Chef Am., Inc. v. Lamb-Weston, Inc.*, 358

2    F.3d 1371, 1374 (Fed. Cir. 2004) ("This court, however, repeatedly and consistently has

3    recognized that courts may not redraft claims, whether to make them operable or to sustain their

4    validity."); *Merck & Co.*, 395 F.3d at 1372 ("A claim construction that gives meaning to all the

5    terms of the claim is preferred over one that does not do so.").

6         Plaintiffs' attempt to show that its "paraphrased" claim limitation is nonetheless present in

7    the Accused Products is unavailing.  Pls.' Reply at 7:24–10:22.  First, Plaintiffs' arguments that

8    Dr. Serrette's analyses "show *the top surface of the top plate of the wall* where the top flanges of

9    the connection portion are attached," and that "the *'top surface' is more particularly specifying a*

10   *surface of the top plate*, i.e. the 'top surface' and 'top plate' are the same structure" were not put

11   forth in their Motion for Summary Judgment.  *Compare* Pls.' Reply at 9:8–10, 9:23–24 (emphasis

12   added) *with* Pls.' MSJ at 13:25–14:20.  Plaintiffs devote one paragraph in their Motion to this

13   limitation, stating that "the [Accused Products] literally meet this limitation as they have a

14   connection portion that includes a top flange configured to be attached to a top plate of a wood-

15   framed wall," and that "Simpson's product literature . . . further demonstrates that the [Accused

16   Products] are configured for attachment to a top plate of the wood stud wall."  Pls.' MSJ at 13:25–

17   14:20 (alterations added).  Plaintiffs cannot sandbag Simpson with new claim construction and

18   infringement arguments raised for the first time in their Reply.  *See VLSI Tech. LLC v. Intel Corp.*,

19   706 F. Supp. 3d 953, 974–75 (N.D. Cal. 2023) (declining to consider citation to patent's file

20   wrapper raised for first time in reply brief because argument was waived); *Competitive Techs.,*

21   *Inc. v. Fujitsu Ltd.*, 333 F. Supp. 2d 858, 863–63 (N.D. Cal. 2004) (declining to reach arguments

22   raised for the first time in reply brief and noting fairness concerns).  Second, Plaintiffs' assertion

23   that a court need not concern itself with "whether a party provides full quotes of every claim

24   limitation" is unfounded.  Pls.' Reply at 8:9–14; *see id.* at 8:7–8 ("Simpson's argument here boils

25   down to 'top surface of a' being absent from Dr. Serrette's paraphrasing of this claim limitation.").

26   To the contrary, Plaintiffs bear the burden of demonstrating that each and every claim limitation is

27   present in the Accused Products.  *Bayer*, 212 F.3d at 1247.

28        Accordingly, Plaintiffs' literal infringement claim is deficient on summary judgment

United States District Court
Northern District of California

because Plaintiffs provide no evidence in their opening brief that one of the claim limitations in Claim 40 is present in the Accused Products. *See Bayer*, 212 F.3d at 1247 ("Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s)."); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005) ("If . . . even one claim limitation is missing or not met, there is no literal infringement.").

### 2.    Conclusion

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion for Summary Judgment on patent infringement. Given the Court's ruling, it need not address Simpson's remaining arguments regarding infringement.

### C.    Simpson's Motion For Patent Invalidity

Simpson argues that summary judgment in its favor is appropriate on its patent invalidity counterclaim because three prior art references anticipate Claim 40 and render Claim 40 obvious. Def.'s MSJ at 9:28, 19:21–20:2. Plaintiffs contend that summary judgment is precluded because Simpson cannot assert the prior art references on summary judgment and multiple issues of material fact exist that must be resolved by a jury. Pls.' Oppo. at 1:1–2:3.

Because patents are presumed valid, an accused infringer must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); *see* 35 U.S.C. § 282 ("A patent shall be presumed valid."). "A moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise." *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1340 (Fed. Cir. 2010) (cleaned up).

### 1.    Anticipation

Simpson argues that Claim 40 is anticipated by both the Cullen and Yamaguchi prior art references.[13] Def.'s MSJ at 9:28. Plaintiffs respond that Yamaguchi does not anticipate Claim 40 because (1) Yamaguchi does not disclose "an extension portion extending from the channel-

---

[13] Because the Court previously granted Plaintiffs partial summary judgment that Simpson cannot assert Cullen in its counterclaim for invalidity, the Court does not reach Simpson's argument that Claim 40 is anticipated by Cullen. *See* ECF No. 151.

United States District Court
Northern District of California

shaped portion," and (2) even if Yamaguchi disclosed that element, it does not disclose "an extension portion . . . configured to extend through the drywall . . . [and] spacing the channel-shaped portion from the back flange plane by a distance sized large enough to permit the drywall to be received."  Pls.' Oppo. at 7:2–10:28.

The Patent Act requires novelty—a claimed invention is patentable

> unless the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention.

35 U.S.C. § 102(a)(1).  Anticipation renders a patent claim invalid when "each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference."  *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987). The reference must also enable a PHOSITA "to make the invention without undue experimentation."  *Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 975 (Fed. Cir. 2010) (cleaned up).  A limitation is inherently disclosed "when the reference discloses prior art that must *necessarily* include the unstated limitation."  *Sigray, Inc. v. Carl Zeiss X-Ray Microscopy, Inc.*, 137 F.4th 1372, 1376 (Fed. Cir. 2025) (emphasis in original) (cleaned up).

To prevail on an invalidity claim, an accused infringer bears the burden of proving anticipation which is a question of fact.  *Orion IP*, 605 F.3d at 975; *see also In re Gleave*, 560 F.3d 1331, 1334–35 (Fed. Cir. 2009) ("anticipation is a question of fact, including whether an element is inherent in the prior art").  Anticipation is a two-step inquiry:  (1) claim construction; and (2) comparison of the properly construed claim to the prior art.  *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003).

Here, the evidence shows that there is a triable issue of fact regarding whether Yamaguchi discloses all the limitations in Claim 40.  The parties stipulated that "'configured to extend through the drywall' means (or requires structurally) 'an extension portion extending from the channel-shaped portion towards the connection portion and defining a space to receive drywall.'" ECF No. 76 at 2:21–3:2.  There is conflicting evidence on whether Yamaguchi discloses "a space to receive drywall" (the "spacing limitation").  Simpson's expert, Mr. Fennell, states that Yamaguchi does not explicitly disclose the spacing limitation.  Mauch Decl., Ex. K (Mr. Fennell's

30

1    Supplemental Report) ¶ 242 (ECF No. 144-11).  Simpson argues that the spacing limitation is

2    inherently disclosed in Yamaguchi because "[t]he size of the space defined by Yamaguchi's

3    extension portion, relative to the width of Yamaguchi's channel-shaped portion . . . is then

4    undeniably at least 3/8 inch."  Def.'s MSJ at 12:18–22 (citing Mauch Decl., Ex. Q (Deposition of

5    Mr. Fennell), at 103:3–105:14 (ECF No. 144-17)).  To support its inherent anticipation theory,

6    Simpson asserts that joists held by hangers are sold in certain standard dimensions and that "3/8

7    inch is less than one quarter of the width of the channel-shaped portion of the smallest hanger

8    sold."  *Id.* at 12:9–22 (citing Mauch Decl., Exs. O, P).  Plaintiffs counter that "Yamaguchi shows

9    *no space* between the wall and beam, nor does it provide any dimensions."  Pls.' Oppo. at 10:12–

10   13 (emphasis in original) (citing Serrette Validity Report ¶¶ 182, 185–86).  Plaintiffs contend that

11   Simpson fails to show that the spacing limitation is inherently disclosed in Yamaguchi because

12   "Mr. Fennell admitted that he was estimating whether the space in figures was large enough to

13   permit drywall."  Pls.' Oppo. at 10:14–24 (citing Declaration of Julie Scheipeter, Ex. 11

14   (Deposition of Mr. Fennell), at 103:3–8 (ECF 156-10)).

15          Construing all evidence in the light most favorable to Plaintiffs, the Court finds that

16   Plaintiffs have created a genuine issue of fact regarding whether Yamaguchi discloses the spacing

17   limitation in Claim 40.  Because Simpson relies on inherent anticipation for this limitation,

18   Simson can only prevail on summary judgment if it demonstrates that the spacing limitation is

19   *necessarily* disclosed in Yamaguchi.  *Sigray*, 137 F.4th at 1376.  But Simpson's expert merely

20   *estimated* any space that may be present in Yamaguchi—in doing so, he relied on figures from

21   Yamaguchi without explaining whether those figures were made to scale.  On summary judgment,

22   Simpson cannot use "drawings not explicitly made to scale" to conclusively establish that

23   Yamaguchi contains the spacing limitation.  *Nystrom v. TREX Co.*, 424 F.3d 1136, 1149 (Fed. Cir.

24   2005).  Further, the parties' experts both rely on material record facts—the Yamaguchi design—to

25   explain their differing opinions regarding whether Yamaguchi inherently discloses the spacing

26   limitation.  *See* Mr. Fennell's Supplemental Report ¶ 242; Serrette Validity Report ¶¶ 182, 185–

27   86.  In other words, two technical experts reach different conclusions regarding the same technical

28   drawing—this is the epitome of a genuine dispute of material fact.  *Cf. U.S. Water Services, Inc. v.*

1    *Novozymes A/S*, 843 F.3d 1345, 1351–52 (Fed. Cir. 2016) (reversing grant of summary judgment

2    on inherent anticipation because experts' testimony created genuine issue of material fact).

3    Therefore, a reasonable jury could find that the spacing limitation is not inherently disclosed in

4    Yamaguchi.

5         Simpson's arguments that it can rely on non-scaled drawings to demonstrate inherent

6    anticipation by clear and convincing evidence are not persuasive.  Simpson first argues that

7    Yamaguchi must disclose the spacing limitation because "both joists and drywall come in standard

8    sizes that provide context for the general dimensions and scale."  Def.'s Reply at 2:2–4.  This

9    assertion—repeated from Simpson's opening brief and addressed above—conflicts with that of

10   Plaintiffs' expert.  Simpson next argues that "an accused infringer may derive approximate

11   dimensions or proportions from a prior art design patent when asserting invalidity, even though

12   the general rule is that patent drawings are not presumed to be to scale."  Def.'s Reply at 10:22–

13   24.  But the cases Simpson cites to for this proposition are inapposite.  *Id.*  Unlike in *Edgewell*

14   *Pers. Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.*, where the parties' experts agreed on the

15   interpretation of a patent drawing, the experts in this case do not reach a consensus on the

16   Yamaguchi drawing.  *See Edgewell Pers. Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.*, No.

17   15-1188 (KAJ), 2018 U.S. Dist. LEXIS 230070, at *17 (D. Del., Mar. 27, 2018) (concluding there

18   is no material dispute of fact because the experts agree "that an elongated applicator tip with four

19   petals would necessarily have an A/B ratio less than 1.0 and an L/W ratio greater than 1.0").  And

20   *In re Mraz* concerned claims rejected by the USPTO; it did not involve invalidity at all.  *In re*

21   *Mraz*, 455 F.2d 1069, 1071–72 (C.C.P.A. 1972).  Finally, Simpson's argument that Plaintiffs'

22   arguments are precluded because at the Federal Circuit, Plaintiffs used "the scale of the figures in

23   the '510 Patent to prove the validity of their claims," lacks legal support.  Def.'s Reply at 11:14–

24   26.  Tellingly, Simpson does not cite any authority supporting this proposition.

25        Accordingly, the Court **DENIES** Simpson's Motion for Summary Judgment that Claim 40

26   is anticipated by Yamaguchi.  Given the Court's ruling, it need not address Plaintiffs' remaining

27   arguments regarding anticipation.

28

United States District Court
Northern District of California

**2.    Obviousness**

Simpson argues that Claim 40 is obvious over the combination of Yamaguchi and Bundy and obvious over the combination of Cullen and Bundy.[14]  Def.'s MSJ at 19:21–20:2.  Plaintiffs respond that Claim 40 is not obvious over Yamaguchi and Bundy because (1) the combination of Yamaguchi and Bundy does not disclose all limitations of Claim 40; (2) Simpson fails to make the "additional showing" that a PHOSITA would "have been motivated to modify Yamaguchi to incorporate the teachings of Bundy"; and (3) Bundy "expressly teaches away from any hanger that would require alteration of the fire-resistant drywall."  Pls.' Oppo. at 14:17–17:21.  Plaintiffs further contend that Simpson's motion fails because Simpson did not discuss any evidence of secondary considerations in its opening brief.  *Id.* at 14:6–16.

The Patent Act requires nonobviousness—a claimed invention is unpatentable

> if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.

35 U.S.C. § 103.  Obviousness is a question of law based on four factual inquiries, known as the *Graham* factors:  "the scope and content of the prior art, the differences between the prior art and the claimed invention, the level of ordinary skill at the time the invention was made, and any objective considerations that may be present."  *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1270 (Fed. Cir. 1991) (citing *Graham v. John Deere Co.,* 383 U.S. 1, 17 (1966)).  "Secondary considerations include evidence of factors tending to show nonobviousness, such as commercial success of the invention, satisfying a long-felt need, failure of others to find a solution to the problem at hand, and copying of the invention by others."  *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1582 (Fed. Cir. 1996).  Courts must consider evidence regarding all four *Graham* factors before making a determination on obviousness.  *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1075 (Fed.

---

[14] Because the Court previously granted Plaintiffs partial summary judgment that Simpson cannot assert Cullen in its counterclaim for invalidity, the Court does not reach Simpson's argument that Claim 40 is rendered obvious by Cullen and Bundy.  *See* ECF No. 151.

1    Cir. 2012).

2        When an invalidity claim is premised on the combination of elements from the prior art, an

3    accused infringer must "identify a reason that would have prompted a person of ordinary skill in

4    the relevant field to combine the elements in the way the claimed new invention does." *KSR Int'l*

5    *Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007); *see also In re Cyclobenzaprine*, 676 F.3d at 1068–

6    69 (citation omitted) (noting that the patent challenger bears the burden of proving that "a skilled

7    artisan would have had reason to combine the teaching of the prior art references to achieve the

8    claimed invention, and that the skilled artisan would have had a reasonable expectation of success

9    from doing so").  Moreover, summary judgment is improper where any of the *Graham* factors are

10   in material dispute.  *KSR*, 550 U.S. at 427.

11       Here, the evidence shows that there is a triable issue of fact regarding the differences

12   between the prior art and Claim 40.  As discussed above, Simpson has not shown that Yamaguchi

13   discloses the spacing limitation in Claim 40.  Simpson argues that even if Yamaguchi does not

14   disclose the spacing limitation, a PHOSITA "would have understood from Bundy that Yamaguchi

15   could be used with drywall such that the extension portion of Yamaguchi in combination with

16   Bundy defines a space to permit drywall."  Def.'s MSJ at 20:20–22.  Simpson asserts that "Bundy

17   teaches an extension portion sized to accommodate drywall between Bundy's channel-shaped

18   portion and the wall."  *Id.* at 21:18–20 (citing Bundy at col. 5, ln. 10–21, 38-45, Fig. 1; Mr.

19   Fennell's Supplemental Report ¶¶ 245–46, 263–64; Mauch Decl., Ex. T (Invalidity Claim Chart),

20   at 5–6 (ECF No. 144-20)).  Plaintiffs contend that Bundy does not teach the spacing limitation and

21   thus, the combination of Bundy and Yamaguchi does not disclose all limitations in Claim 40.  Pls.'

22   Oppo. at 15:8–17:21.  Plaintiffs assert that "the Bundy hanger itself [does not] define a fixed space

23   capable of receiving sheathing."  *Id.* at 15:8–15 (citing Serrette Validity Report ¶¶ 96–97, 257)

24   (alteration added).

25       Construing all evidence in the light most favorable to Plaintiffs, the Court finds that

26   Plaintiffs have created a genuine issue of fact regarding whether the combination of Bundy and

27   Yamaguchi disclose the spacing limitation in Claim 40.  The parties both submit evidence from

28   their respective experts regarding whether Bundy discloses a spacing limitation.  To be sure, "a

conclusory affidavit addressing the question of obviousness" does not "exclude the possibility of summary judgment." *KSR*, 550 U.S. at 426.  But here, the parties' experts both rely on material record facts—the Bundy patent—to explain their differing opinions regarding whether Bundy discloses the spacing limitation.  *See* Mr. Fennell's Supplemental Report ¶¶ 245–46, 263; Serrette Validity Report ¶¶ 96–97, 257.  As such, the parties' evidence creates a genuine dispute of material fact.  *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1349 (Fed. Cir. 2017) (recognizing, in the context of obviousness, that expert declarations based on reasonable inferences from the factual record can prevent summary judgment).  Therefore, because summary judgment of obviousness is precluded when there is an issue of fact regarding the differences between the prior art and the asserted patent claim, Simson cannot prevail.  *KSR*, 550 U.S. at 427.

Accordingly, the Court **DENIES** Simpson's Motion for Summary Judgment that Claim 40 was obvious over the combination of Yamaguchi and Bundy.

### 3. Conclusion

For the reasons stated above, the Court **DENIES** Simpson's Motion for Summary Judgment on invalidity.  Given the Court's ruling, it need not address Plaintiffs' remaining arguments regarding obviousness.

## VI.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Simpson's Motion in Limine, **DENIES** Plaintiffs' Motion for Summary Judgment, and **DENIES** Simpson's Cross-Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: July 9, 2025

THOMAS S. HIXSON
United States Magistrate Judge