| | |
|---|---|
| COLUMBIA INSURANCE CO., et al.,<br><br>    Plaintiffs,<br><br>       v.<br><br>SIMPSON STRONG-TIE COMPANY INC.,<br><br>    Defendant. | Case No. 19-cv-04683-TSH<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO BIFURCATE**<br><br>Re: Dkt. No. 211 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

## I.   INTRODUCTION

Plaintiffs Columbia Insurance Co. ("Columbia") and MiTek Inc. (collectively "Plaintiffs") filed a complaint for patent infringement against Defendant Simpson Strong-Tie Company Inc. ("Simpson"). ECF No. 61 (First Amended Complaint). Simpson filed a counterclaim for patent invalidity against Plaintiffs. ECF No. 64. Pending before the Court is Simpson's Motion To Bifurcate, in which Simpson requests the Court separate the trial into two phases under Federal Rule of Civil Procedure 42(b). ECF No. 211 ("Mot."). For the reasons stated below, the Court **GRANTS** the motion.[1]

## II.   BACKGROUND

The facts of this case are well known to the parties, and the Court has previously summarized this case's background in its order on the parties' cross-motions for summary judgment. ECF No. 200 at 2–8; *see Columbia Ins. Co. v. Simpson Strong-Tie Co. Inc.*, No. 19-cv-04683-TSH, 2025 WL 1999912 (N.D. Cal. July 17, 2025). The Court incorporates by reference

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 9, 17.

1  the factual background set forth therein.

2      Columbia, located in Nebraska, is the owner of U.S. Patent No. 10,316,510 ("the '510
3  Patent"), entitled "Hanger for Fire Separation Wall," which is the patent-in-suit.  First Amended
4  Complaint ("FAC") (ECF No. 61) ¶¶ 1, 7, 15.  MiTek, located in Missouri, is the exclusive
5  licensee of the '510 Patent.  *Id.* ¶¶ 2, 16.  MiTek manufactures and sells hangers used in building
6  construction and structures for connecting structural components to wall framing, such as trusses
7  and joists.  *Id.* ¶ 17.  Simpson is a California corporation that "has made, used, sold, or offered for
8  sale fire wall hangers that are adapted for connecting a trusses and joist to walls."  *Id.* ¶¶ 3, 25;
9  Simpson's Answer to FAC ¶¶ 3, 25 (ECF No. 64).

10      Plaintiffs allege that Simpson's products infringe Claim 40 of the '510 Patent.  FAC ¶¶ 54–
11  55.  Simpson alleges that Claim 40 is invalid because it is anticipated by prior art, and it is obvious
12  over combinations of prior art.  Simpson's Cross-Motion for Summary Judgment on Invalidity at
13  9:28, 19:21–20:2 (ECF No. 142).

14      On October 28, 2024, Plaintiffs filed a motion for partial summary judgment, seeking
15  summary judgment on Simpson's counterclaim that Claim 40 is invalid.  ECF No. 86.  In that
16  motion, Plaintiffs argued that under Post-Grant Review ("PGR") Estoppel (35 U.S.C. § 325(e)(2)),
17  Simpson is estopped from asserting the Yamaguchi, Cullen, and Chapin references as prior art
18  against Claim 40 of the '510 Patent.  *Id.* at 1–2.  Regarding PGR Estoppel, the parties engaged in
19  document productions and conducted discovery that included five expert reports and depositions
20  of six percipient and expert witnesses.  Mot. at 3:5–12 (citing Declaration of Joseph V. Mauch ¶ 2
21  (ECF No. 211-1)).  According to Simpson, the six witnesses relevant to PGR Estoppel are:
22  Eugene Lhymn, Drew Hirshfeld, Long Nguyen, Brian Hameder, Charlie Cypher and James
23  Martin.  *Id.* at 3:12–20.  Plaintiffs do not dispute that the PGR Estoppel issue involves these six
24  witnesses, but in their Opposition to Simpson's Motion, Plaintiffs reference only Hirshfeld and
25  Lhymn.  *See* Plaintiffs' Opposition to Motion To Bifurcate ("Opp.") at 9:16–21 (ECF No. 217).
26  The parties previously filed cross-*Daubert* motions to exclude various portions of these experts'
27  testimonies.  *See* ECF Nos. 84 (Plaintiffs' *Daubert* Motion to Exclude Testimony of Hirshfeld,
28

1  Cypher, and Nguyen); 97-4 (Simpson's *Daubert* Motion to Exclude Testimony of Lhymn).[2]

2  On May 30, 2025, the Court issued an order (1) concluding that Simpson is estopped from

3  asserting the Cullen reference in these proceedings; (2) granting Plaintiffs' motion for partial

4  summary judgment as to the Cullen reference only; (3) denying Simpson's *Daubert* motion; and

5  (4) granting in part and denying in part Plaintiffs' *Daubert* motion. *See* ECF No. 151. On June

6  11, 2025, Simpson moved for clarification of the Court's May 30, 2025, order. ECF No. 180. In

7  its order on Simpson's motion for clarification, the Court stated:

> Plaintiffs have correctly interpreted the Court's order. The Court granted Plaintiffs' motion as to the Cullen reference, meaning that Simpson is estopped from asserting that reference. The Court denied Plaintiffs' motion as to the Chapin and Yamaguchi references, finding triable questions of fact concerning whether Simpson is estopped from asserting those references. Those triable questions of fact will be resolved at trial.

12  ECF No. 190. A jury trial is scheduled for October 27, 2025. ECF No. 206.

13  In the parties' most recent Joint Case Management Statement, Plaintiffs indicate that they

14  plan on asserting the defense of PGR Estoppel at trial. *See* ECF No. 201 at 9–10. Simpson filed

15  its instant Motion To Bifurcate on August 11, 2025. ECF No. 211 ("Mot."). Simpson proposes

16  bifurcating the trial into two phases by

> requesting the Court to conduct a bench trial on Plaintiffs' equitable defense that Simpson is estopped from asserting certain prior art references prior to any jury trial on the issues of whether Simpson infringes the asserted patent claim and whether the asserted patent claim is invalid.

20  Mot. at 1:2–7. On August 18, 2025, Plaintiffs filed an Opposition. ECF No. 217 ("Opp.").

21  Simpson elected not to file an optional Reply. *See* ECF No. 210 (Order on Expedited Briefing), at

22  2 (Simpson "agreed to forego a Reply Brief" unless "Plaintiffs found and rely on any case in

23  which PGR or IPR estoppel was decided by a jury, in a direct or advisory manner . . .").

---

[2] Simpson's *Daubert* motion was filed under seal (ECF No. 97-4). The redacted version was filed on the public docket (ECF No. 98-9).

### III.   LEGAL STANDARD

A court may bifurcate a trial for "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Under Rule 42(b),

> the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

*Id.*

A court has "broad discretion" in deciding whether to bifurcate. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (citation omitted). "Bifurcation, however, is the exception, not the norm as a single proceeding will generally be a more efficient and reasonable means of resolving the action." *San Bernardino Cty. v. Ins. Co. of the State of Pa.*, No. CV-21-1978-PSG(JEMx), 2023 WL 2629888, at *1 (C.D. Cal. Feb. 6, 2023) (cleaned up); *accord GEM Acquisitionco, LLC v. Sorenson Grp. Holdings, LLC*, No. C-09-01484-SI, 2010 WL 1729400, at *3 (N.D. Cal. Apr. 27, 2010). "Courts 'consider several factors in determining whether bifurcation is appropriate, including separability of the issues, simplification of discovery and conservation of resources, and prejudice to the parties.'" *Jones v. Nat'l R.R. Passenger Corp.*, No. 15-cv-02726-TSH, 2018 WL 6606247, at *4 (N.D. Cal. Dec. 17, 2018) (quoting *McDermott v. Potter*, No. C-07–06300-SI, 2010 WL 956808, at *1 (N.D. Cal. Mar. 12, 2010)). "The party seeking bifurcation bears the burden of showing that bifurcation is justified in the given circumstances." *San Bernardino*, 2023 WL 2629888, at *1 (citation omitted); *accord GEM*, 2010 WL 1729400, at *2.

### IV.   DISCUSSION

Simpson argues that "the Court should grant this Motion and order a separate bench trial of Plaintiffs' PGR Estoppel defense prior to the jury trial on infringement and invalidity." Mot. at 2:17–18. Simpson asserts that "every factor that courts in this Circuit consider when deciding whether to conduct separate trials of certain issues favors bifurcation here[.]" *Id.* at 1:13–15. Plaintiffs contend PGR Estoppel "can and should be properly resolved in a single, unified trial through the use of special interrogatories submitted to the jury—as is commonly done with other

4

issues in patent cases." Opp. at 3:1–3. Plaintiffs assert that Simpson's Motion is "procedurally improper and substantially unwarranted," and "creates judicial inefficiencies for both the Court and the parties, and greatly prejudices [Plaintiffs]." *Id.* at 1:3–20.

In sum, the Court finds that it is appropriate to exercise its discretion to conduct a bench trial on PGR Estoppel prior to a jury trial on the remaining legal issues. Therefore, bifurcation of the trial is warranted.

**A.     PGR Estoppel**

The Court must decide whether it should order a separate bench trial on Plaintiffs' PGR Estoppel defense. As such, the Court first sets forth legal principles underlying PGR Estoppel.

Under the America Invents Act (AIA), the United States Patent and Trademark Office ("USPTO") may reconsider the validity of issued patents through post-grant review (PGR) proceedings. *Return Mail, Inc. v. United States Postal Serv.*, 587 U.S. 618, 622–24 (2019). The PGR provision "permits 'a person who is not the owner of a patent' to petition for review and cancellation of a patent on any ground of patentability." *Id.* at 624 (quoting 35 U.S.C. § 321). The PGR provision is interpreted in tandem with the inter-partes review (IPR) provision where the two provisions contain identical language—thus, caselaw from the Court of Appeals for the Federal Circuit regarding IPR applies equally to the PGR provision. *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1053 (Fed. Cir. 2017).

Parallel proceedings occur when a patent is litigated both in district court and in USPTO proceedings, such as through PGR. *E.g., Apple Inc. v. Vidal*, 63 F.4th 1, 8 (Fed. Cir. 2023). PGR Estoppel applies in parallel proceedings that involve PGR proceedings at the Patent Trial and Appeal Board ("PTAB"). *See Credit*, 859 F.3d at 1049 ("Once the Board issues a final written decision, the estoppel statute applies."). The PGR Estoppel provision states, in relevant part:

> (2) Civil actions and other proceedings.--The petitioner in a post-grant review of a claim in a patent under this chapter that results in a final written decision under section 328(a), or the real party in interest or privy of the petitioner, may not assert either in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that post-grant review.

35 U.S.C. § 325(e)(2). As with the PGR provision, caselaw on IPR Estoppel is instructive when

5

1  analyzing PGR Estoppel. *See GREE, Inc. v. Supercell Oy*, No. 19-cv-00071-JRG-RSP, 2019 WL
2  5677511, at *2 (E.D. Tex. Oct. 30, 2019) (observing "the PGR and IPR estoppel provisions are
3  substantively identical"). Because PGR Estoppel is a matter unique to patent law, Federal Circuit
4  law governs its scope and application. *See Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 17-c-7216,
5  2020 WL 5512132, at *2 (N.D. Ill. Sept. 14, 2020) (citing *In re Cray Inc.*, 871 F.3d 1355, 1360
6  (Fed. Cir. 2017)) (in the context of IPR Estoppel).

7  PGR Estoppel is a statutory estoppel provision. *See SynQor, Inc v. Vicor Corp.*, 988 F.3d
8  1341, 1347–48 (Fed. Cir. 2021) (discussing IPR Estoppel). As a form of estoppel, a defense
9  premised on PGR Estoppel is equitable in nature. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*,
10 719 F.3d 1305, 1309 (Fed. Cir. 2013) ("Where words are employed in a statute which had at the
11 time a well-known meaning at common law or in the law of this country, they are presumed to
12 have been used in that sense.") (cleaned up); *Heckler v. Cmty. Health Servs. of Crawford Cnty.,
13 Inc.*, 467 U.S. 51, 59 (1984) ("Estoppel is an equitable doctrine invoked to avoid injustice in
14 particular cases."). The purpose of the PGR Estoppel statute is indeed grounded in equity— "to
15 prevent parties from pursuing two rounds of invalidity arguments before the PTAB and the district
16 court." *GREE*, 2019 WL 5677511, at *4.

17 PGR Estoppel "estops a petitioner as to invalidity grounds a skilled searcher conducting a
18 diligent search reasonably could have been expected to discover, as these are grounds that the
19 petitioner 'reasonably could have raised' in its petition." *Ironburg Inventions Ltd. v. Valve Corp.*,
20 64 F.4th 1274, 1298 (Fed. Cir. 2023) (in the context of IPR Estoppel). "The inquiry into what a
21 skilled and diligent searcher would reasonably have discovered is ultimately concerned with what
22 the searcher of ordinary skill *would* find through reasonable diligence and not what an actual
23 researcher in fact *did* find through whatever level of diligence she exercised." *Id.* at 1299
24 (emphasis in original). "[T]he burden of proving, by a preponderance of the evidence, that a
25 skilled searcher exercising reasonable diligence would have identified an invalidity ground rests
26 on the patent holder, as the party asserting and seeking to benefit from the affirmative defense of
27 [PGR] estoppel." *Id.*

28 District courts routinely decide the application of PGR Estoppel as a matter of law. *See,*

6

*e.g., GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18-civ-05290 (CM), 2023 WL 8827572, at *1 (S.D.N.Y. Dec. 21, 2023) (holding "judges, not juries, decide what issues parties are or are not legally barred from raising"); *accord Innovative Memory Sys., Inc. v. Micron Tech., Inc.*, No. CV-14-1480-RGA, 2022 WL 4548644, at *5 (D. Del. Sept. 29, 2022) (in the context of IPR Estoppel). As with other patent issues, the ultimate determination on PGR Estoppel encompasses underlying questions of fact. *See Intex Recreation Corp. v. Bestway USA Inc.*, No. LA-cv-163300-JAK(Ex), 2023 WL 9687197, at *18 (C.D. Cal. Nov. 27, 2023) (noting the presence of "factual disputes concerning whether a reasonably diligent searcher would have read, and interpreted, and understood the references in the context of the patent as a matter of law") (cleaned up); *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, No. 14-cv-01352-JLS-KES, 2020 WL 1049911, at *4 (C.D. Cal. Feb. 18, 2020) (noting "the question of whether a skilled searcher, conducting a diligent search, reasonably could have been expected to discover these prior art references, is a question of fact"). But where there exists a genuine issue of fact regarding the application of PGR Estoppel, it is appropriate for a court to resolve the factual dispute at a bench trial. *GeigTech*, 2023 WL 8827572, at *1.

Here, Plaintiffs plan on asserting the defense of PGR Estoppel at the parties' upcoming trial. *See* ECF No. 201 at 9–10. The Court previously found that issues of fact precluded summary judgment on Plaintiffs' PGR Estoppel defense regarding the Chapin and Yamaguchi references. ECF No. 151. The parties disagree on whether those factual disputes should be resolved by the Court in a bench trial or by a jury. Simpson argues that any remaining "questions of fact" regarding PGR Estoppel should be resolved "in a bench trial prior to the jury trial." Mot. at 2:12–16. Plaintiffs have employed a shifting sands approach to whether the Court is the proper factfinder for factual issues underpinning the application of PGR Estoppel. *See id.* at 3:21–4:20; *compare* ECF No. 120 (Plaintiffs' Reply in Support of Partial Summary Judgment) at 2 ("PGR estoppel is an equitable defense that must be decided by the Court irrespective of any likely factual dispute[.]") *with* Opp. at 3:6–8 ("PGR estoppel, like other equitable claims and defenses, involves threshold factual determinations that should be made by a jury when disputed."). The Court agrees with the parties that PGR Estoppel is an equitable defense. *See* Mot. at 1:16–17; Opp. at

7

1:21–22. As such, the Court agrees with other district courts that have addressed this issue that it is appropriate for the Court to resolve the factual disputes regarding PGR Estoppel in a bench trial prior to a jury trial on the legal issues. *E.g., GeigTech*, 2023 WL 8827572, at *1; *see Illinois Tool Works, Inc. v. MOC Prods. Co.*, 946 F. Supp. 2d 1042, 1044 (S.D. Cal. 2012) (explaining in a patent case that "[e]quitable defenses . . . are ultimately to be decided by the Court, not the jury"); *see also* Mot. at 7:1–17 (collecting cases).

Plaintiffs' assertion that "[t]he Federal Circuit has consistently recognized that juries *must* resolve disputed facts even in the context of equitable defenses" is not supported by Federal Circuit caselaw. Opp. at 3:8–9 (emphasis added). Plaintiffs go on to cite a panoply of cases that hold a trial court has *discretion* in choosing how to resolve an equitable defense's underlying factual disputes. *Id.* at 3:11–23, 4:16–5:6; *see, e.g., Hebert v. Lisle Corp.*, 99 F.3d 1109, 1114 (Fed. Cir. 1996) ("Some courts have reserved the entire issue of inequitable conduct unto themselves; some have submitted special interrogatories to the jury on the facts of materiality and intent; and some have instructed the jury to find and weigh the facts of materiality and intent and decide the ultimate question of inequitable conduct, as in the case at bar. . . . [a]bsent a clear showing of prejudice, or failure to achieve a fair trial, the district court's choice of procedure will not be disturbed."). Similarly, Plaintiffs' pronouncement that "[t]he *proper procedure*" for handling the PGR Estoppel issue is "the jury determines the underlying facts through special interrogatories, and then the court applies the law to those facts," finds no support in the relevant caselaw. Opp. at 5:7–6:3 (emphasis added). Plaintiffs again cite to cases holding that a district court *may* permit "juries to return advisory verdicts on equitable claims[.]" *Id.* (citing *e.g., Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1333–34 (Fed. Cir. 2011)). Notably, not only is the choice to employ an advisory jury verdict within the province of the trial court, but such a verdict is not binding on the court. *Am. Calcar*, 651 F.3d at 1333.

Overall, the parties have not identified—and the Court is not aware of any—cases where PGR Estoppel, or IPR Estoppel, was tried by a jury, advisory or otherwise. *See* Mot. at 13:6–16. Therefore, nothing in the background principles or caselaw associated with PGR Estoppel forecloses the Court from ordering a bench trial on this issue. Moreover, as discussed below, in

8

addition to the caselaw specific to PGR Estoppel, the Court finds that the factors under Rule 42(b) also favor bifurcating the PGR Estoppel issue.

Accordingly, the Court concludes that bifurcation is warranted.

## B.      Separability Of The Issues

Simpson argues that the issue of PGR Estoppel is separable from the issues of patent infringement and patent invalidity because (1) Plaintiffs do not have the "right to a jury trial on their equitable defense of PGR Estoppel"; and (2) the witnesses and the "body of law and facts relating to PGR Estoppel [are] entirely different" from the jury issues of infringement and invalidity. Mot. at 1:16–24. Plaintiffs contend that (1) a jury should resolve the factual disputes regarding credibility; and (2) "the evidentiary presentations for both PGR estoppel and invalidity could include substantial factual overlap." Opp. at 6:4–20.

The Seventh Amendment to the United States Constitution preserves the right to a jury trial for legal claims but not for equitable claims, such as a claim for injunctive relief. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001); *see* U.S. Const. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]"). Federal courts may separate legal and equitable claims "so long as the legal and equitable issues are distinct." *Danjaq*, 263 F.3d at 962. "When the legal and equitable issues overlap and the evidence is intertwined," however, "the district court must take care not to impinge on the right to a jury." *Id.* For that reason, in cases involving overlapping legal and equitable claims, "the legal claims involved in the action must be determined prior to any final court determination of the equitable claims." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962).

In patent cases, a court my hold a bench trial on equitable defenses without violating the Seventh Amendment when any factual disputes turn on different factual foundations from those in the legal issues tried by a jury. *See Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1371–73 (Fed. Cir. 2006) (affirming trial court's decision to hold bench trial on inequitable conduct prior to jury trial on patent validity because the two issues were not "common issues" that must be tried by a jury). In that situation, the court may resolve issues of fact regarding the equitable defenses in a

bench trial. *See Paragon Podiatry Lab'y, Inc. v. KLM Lab'ys, Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993) ("The defense of inequitable conduct in a patent suit, being entirely equitable in nature, is not an issue for a jury to decide. . . . [t]hus, a disputed finding of intent to mislead or to deceive is one for the judge to resolve, not the jury, albeit not on summary judgment if there is a genuine dispute."); *see also Granite State Ins. Co. v. Smart Modular Techs., Inc.,* 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").

Here, the Court concludes that holding a bench trial on PGR Estoppel would not violate the Seventh Amendment because—at least in this case—PGR Estoppel is not a common issue with either infringement or invalidity. First, the Court's resolution of factual disputes within PGR Estoppel does not offend the Seventh Amendment. Plaintiffs do not argue that they have a Constitutional right to a jury trial on their PGR Estoppel defense. Nor could they. Both Ninth Circuit and Federal Circuit precedent squarely hold that no right to jury trial exists for equitable defenses. *See Agfa*, 451 F.3d at 1371–73; *Granite,* 76 F.3d at 1027. Plaintiffs make a single argument for why it is more appropriate for a jury to decide the factual issues than the Court: the "key factual dispute centers on [Plaintiffs'] expert's credibility," and "[c]redibility determinations are quintessentially within the province of the jury." Opp. at 6:4–7. But this argument mimics one rejected by the Federal Circuit. *See Paragon*, 984 F.2d at 1190 (rejecting argument that intent element of inequitable conduct is an issue to be resolved by the jury and holding "[a] patentee has no right to a jury trial respecting the factual element of culpable intent as part of the defense of inequitable conduct").

Second, Plaintiffs' PGR Estoppel defense involves different witnesses, law, and facts from the issues of infringement and invalidity. Regarding witnesses, Simpson argues that "[n]one of the six witnesses who will testify in the requested bench trial regarding estoppel will have to return to testify in the jury trial on infringement and invalidity." Mot. at 9:8–10. Plaintiffs do not respond directly to this argument but instead make the vague assertion that "the state of the art at the relevant time period, which will be presented by both parties' substantive experts, will necessarily bear on the reasonableness of a search and claims of invalidity[.]" Opp. at 6:15–17.

10

1    Plaintiffs do not indicate *which* witnesses will overlap in Simpson's proposed bifurcated trial.[3]
2    And in fact, Plaintiffs did not rely on the witnesses that Simpson identified as pertinent to PGR
3    Estoppel in Plaintiffs' briefing opposing Simpson's motion for summary judgment on invalidity.
4    *See generally* ECF No. 157-2.[4]  Therefore, there is no indication that bifurcation will require
5    repetition of witnesses.

6    Regarding the legal and factual issues, Simpson argues that the issues "for the two trials
7    are entirely separate and distinct." Mot. at 9:4–6.  Plaintiffs contend that "[t]he scope and content
8    of the applicable prior art" and "the state of the art at the relevant time period" are "necessary for
9    the estoppel inquiry and Simpson's obviousness challenge." Opp. at 6:13–18.  Tellingly, Plaintiffs
10   cite to no authority for this proposition.  To be sure, Plaintiffs identify underlying factual inquiries
11   for obviousness. *See Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1270 (Fed. Cir. 1991)
12   (citing *Graham v. John Deere Co.,* 383 U.S. 1, 17 (1966)) (explaining that obviousness is a
13   question of law based on four factual inquiries, known as the *Graham* factors: "the scope and
14   content of the prior art, the differences between the prior art and the claimed invention, the level of
15   ordinary skill at the time the invention was made, and any objective considerations that may be
16   present").  However, the underlying factual inquiry for PGR Estoppel in this case is entirely
17   different—"whether a skilled searcher, conducting a diligent search, reasonably could have been
18   expected to discover these prior art references." *E.g., Pavo*, 2020 WL 1049911, at *4.  Elsewhere
19   in their brief, Plaintiffs unequivocally agree that this "is the factual question to be answered"
20   regarding PGR Estoppel. Opp. at 9:16–18.  Thus, it is unclear why Plaintiffs posit that
21   obviousness and PGR Estoppel involve the same factual inquiries; the two issues clearly do not.
22   In sum, bifurcation would involve distinct legal and equitable issues.

23   Further, Plaintiffs' reliance on the Court's previous summary judgment order on PGR

---

[3] In another section of their brief, Plaintiffs argue: "to the extent any substantive witness is required to testify regarding the state of the art at the time of any search, or the scope and content of the prior art, the parties' liability experts would be required to testify in two different proceedings.  This would lead [Plaintiffs] having to pay for certain witness expenses twice." Opp. at 11:7–10.  But again, Plaintiffs do not explain which witnesses would be repetitive.

[4] Plaintiffs' opposition to Simpson's motion for summary judgment on invalidity was filed under seal (ECF No. 157-2).  The redacted version was filed on the public docket (ECF No. 156).

1   Estoppel is misguided.  Plaintiffs argue that the Court ruled "that there are questions of fact
2   remaining as to whether estoppel should be applied to the Yamaguchi and Chapin references" that
3   must be decided by a jury.  *Id.* at 12:11–13:1.  Not so.  The Court explained—in its summary
4   judgment order on PGR Estoppel and again in its order on Simpson's motion for clarification—
5   that factual disputes regarding PGR Estoppel existed.  *See* ECF No. 151, at 26; ECF No. 190.
6   While the Court indicated that these factual disputes would be resolved at trial, the Court was not
7   asked to decide what *type* of trial would be most appropriate for these disputes.  *See* ECF No. 190
8   ("Those triable questions of fact will be resolved at trial.").

9   Accordingly, the Court finds that this factor weighs in favor of bifurcation.

**C.  Judicial Economy**

Simpson argues bifurcation serves the interest of judicial economy because it reduces "the length of jury trial by two or three days" and "potentially eliminat[es] the need for a jury trial completely if Simpson is estopped from asserting all references."  Mot. at 1:25–27.  Plaintiffs contend that bifurcation would create "judicial inefficiencies for both the Court and the parties," and would require the parties "to expend resources on two trials, as opposed to one."  Opp. at 1:7–8, 6:27–7:1.

"Bifurcation is often in the interest of efficiency and judicial economy when the resolution of one claim may obviate the need to adjudicate one or more other claims."  *Desmare v. New Mexico*, No. CIV-07–199-JB/RHS, 2007 WL 5231690, at *2 (D.N.M. Aug. 14, 2007) (citing *Mandeville v. Quinstar Corp.*, 109 F. App'x 191, 194 (10th Cir. 2004)); *see also Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999) (explaining bifurcation appropriate where "the litigation of the first issue might eliminate the need to litigate the second issue").  Moreover, "[o]verlap in the evidence as between the two claims may militate in favor of one slightly longer trial rather than two long trials."  *Matsushita Elec. Indus. Co. v. CMC Magnetics Corp.*, No. C-06-04538-WHA, 2007 WL 219779, at *2 (N.D. Cal. Jan. 29, 2007).

Here, the Court concludes that bifurcation would aid judicial economy.  First, bifurcation would promote efficiency because it is likely that a bench trial on PGR Estoppel will require fewer days and less Court resources than a jury trial on that issue.  Simpson argues that bifurcation

promotes efficiency because "the Court is already well-versed in the facts, expert opinions, and law that are at issue, based on the PGR Estoppel briefing." Mot. at 10:10–13. Plaintiffs dismiss this argument under the premise that if accepted, it "would mean that any case could meet the Rule 42(b) standard for bifurcation." Opp. at 8:23–24. Plaintiffs contend that "in any trial," the court is well-versed in the legal and factual issues. *Id.* at 8:24–27. The Court disagrees. It is not in every case that the court dives into extensive briefing and expert opinions prior to trial; however, this is true for this case, where the Court previously ruled on a motion for partial summary judgment and dueling *Daubert* motions regarding PGR Estoppel. *See* ECF No. 151.

Second, bifurcation promotes judicial economy because it is not likely to increase costs and may result in less cost to the parties. There is no dispute that bifurcation would reduce the number of days in the jury trial by at least the number of days required for PGR Estoppel. *See* Mot. at 9:19–22; Opp. at 9:22–24. True, the number of days may not be reduced by more than this amount, but it is salient that a determination on PGR Estoppel "may obviate the need to adjudicate" one or more aspects of Simpson's invalidity counterclaim. *Cf. Desmare*, 2007 WL 5231690, at *2, 9. Moreover, as discussed, there is no overlap in the evidence between PGR Estoppel and infringement and invalidity that swings the judicial economy pendulum in Plaintiffs' favor. Thus, this case is unlike other cases where duplicative efforts in two trials led to increased costs and decreased judicial efficiency. *Contra Gravity Defyer Corp. v. Under Armour, Inc.*, No. LA-cv-1301842-JAK(JCGx), 2013 WL 12138987, at *3 (C.D. Cal. July 23, 2013) ("Bifurcation invites two rounds of discovery, with depositions of some the same persons taken more than once, and additional potential for disputes.").

Plaintiffs' reliance on *Jones v. National Railroad Passenger Corp.* is misplaced. Opp. at 7:10–16 (citing 2018 WL 6606247, at *5). In *Jones*, the Court concluded that "bifurcation would not aid judicial economy" where "bifurcation would require the Court to reopen discovery," thereby increasing the costs and duration of the litigation. *Jones*, 2018 WL 6606247, at *5–6. In contrast, here, discovery for PGR Estoppel is closed, and the parties have already shepherded their respective evidence in their briefs for summary judgment. Therefore, the concerns present in *Jones* are not present in this case.

13

1   Accordingly, the Court finds that this factor weighs in favor of bifurcation.

2   **D.   Prejudice**

3   Simpson argues that "bifurcation results in no prejudice to Plaintiffs whereas failure to conduct separate trials prejudices Simpson by forcing it to unnecessarily present its PGR Estoppel case to the jury, which will significantly increase its costs and could cause juror confusion and error regarding Simpson's invalidity counterclaim."  Mot. at 2:4–7.  Plaintiffs contend that bifurcation "would significantly prejudice [Plaintiffs] by delaying resolution, increasing costs, and allowing Simpson to engage in strategic gamesmanship."  Opp. at 10:17–19.

Here, the Court agrees with Simpson that holding a single jury trial would likely prejudice Simpson.  As discussed, bifurcation would result in fewer witnesses in the jury trial which would almost certainly result in less cost for witness preparation and examination.  *See* Mot. at 11:26–12:4.  And, as discussed, a single jury trial could result in Simpson wasting time and resources arguing its invalidity theories to a jury that are later mooted by the determination on PGR Estoppel.  *See id.* at 12:4–6.

In making its determination, the Court must also consider prejudice to Plaintiffs.  *See Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) ("Next, the Court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party.") (citing *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 964 (10th Cir. 1993)); *see also Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1435 (D. Del. 1989) (explaining in a patent case, "[p]erhaps the most important consideration for a court ruling on a motion to bifurcate is whether separate trials would unduly prejudice the non-moving party").  Plaintiffs argue that bifurcation would increase their litigation costs and increase the time in which this matter would be resolved, which are valid concerns.  Opp. at 6:27–7:9, 10:17–19; *see Transcon. Ins. Co. v. St. Paul Mercury Ins. Co.*, No. CV–05–31–H–DWM–CSO, 2006 WL 3859009, at *4 (D. Mont. Dec. 1, 2006) ("The risk of prejudice to Alpine does not outweigh the delay, expense, and inconvenience that would result to St. Paul and the Court from bifurcation.  Bifurcation would require the Court, parties, attorneys, and many witnesses to go through two trials, thereby delaying a final judgment.").

14

1    The Court concludes that the risk of prejudice that would result to Plaintiffs from
2    bifurcation is minimal and does not outweigh the risk of prejudice that would result to Simpson
3    from a single jury trial.  First, as discussed, it is difficult to envision how a shorter jury trial would
4    increase Plaintiffs' costs, especially where there is no redundancy in witnesses and evidence.
5    Plaintiffs barely argue otherwise—they only state that they would have "to pay for certain witness
6    expenses twice."  Opp. at 11:9–10.  But Plaintiffs' brief is devoid of information showing that this
7    would be the case.  Second, while bifurcation will result in some delay to resolution of the case, it
8    does not amount to "unfair delay" in this case because Simpson has demonstrated that other
9    factors weigh in favor of bifurcation.  *See Willemijn*, 707 F. Supp. at 1435 (explaining "prejudice
10   under these circumstances may simply amount to unfair delay of the final disposition of the
11   matter" where moving party failed to show that separability, juror confusion, or judicial economy
12   factors favored bifurcation).  Plaintiffs argue that they are prejudiced by delay because they filed
13   their initial infringement complaint six years ago.  Opp. at 10:23–28.  But "[p]atent litigation
14   frequently is complex, long, and difficult."  *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089,
15   1092 (Fed. Cir. 1997).  While discovery procedures and summary judgment motions are often
16   necessary to narrow the issues for a patent trial, these add to the time spent litigating a patent.  *Id.*
17   Such is the case here, where the parties have engaged in extensive discovery and litigated PGR
18   proceedings, dueling *Daubert* motions, and multiple summary judgment motions.  In short, the
19   small delay caused by bifurcation does not unfairly prejudice Plaintiffs.  Nor does Simpson's
20   filing of its Motion "only three months before trial" prejudice Plaintiffs by "asking the Court to
21   deviate from an already impacted trial schedule with no good reason."  Opp. at 10:24–26.  For
22   Simpson could only file its Motion after Plaintiffs moved for partial summary judgment on PGR
23   Estoppel and the Court issued its ruling on that motion.
24   Plaintiffs' remaining argument that bifurcation "allow[s] Simpson to engage in strategic
25   gamesmanship" is unavailing.  *Id.* at 10:19.  Plaintiffs do not point to any improper litigation
26   conduct by Simpson or cite to any authority holding that a party's sustained defense in litigation
27   bears negatively on this factor.  Therefore, the Court disagrees with Plaintiffs that Simpson's
28   Motion amounts to a "transparent attempt at procedural gamesmanship."  *Id.* at 13:11–12.

15

Accordingly, the Court finds that this factor weighs in favor of bifurcation.

**E.     Juror Confusion**

Simpson argues that "conducting a separate bench trial on the complicated issue of PGR Estoppel reduces the risk of juror confusion and error, especially given the fact that the Court is already well-versed in the complicated PGR Estoppel issues from the Parties' earlier briefing and the Court's recent order." Mot. at 1:28–2:3. Plaintiffs contend that this factor does not favor bifurcation because "[t]here is no risk of juror confusion and error." Opp. at 9:6–10:16.

Here, the Court concludes that bifurcation would reduce the risk of juror confusion. The Court agrees with Simpson that bifurcation would reduce juror confusion by eliminating several witnesses and multiple days of jury trial and removing "from the jury hours of complicated testimony that will be interwoven with hours of testimony on other complicated patent issues not related to PGR Estoppel." Mot. at 10:28–11:3. Plaintiffs' argument that there exists no risk of jury confusion because "a jury is capable of comprehending [the] testimony and evidence" is unpersuasive. Opp. at 9:6–22. PGR Estoppel involves complex topics, including multiple patent classification systems, "the search string and search source that would identify the allegedly unavailable prior art," and expert testimony on "why such a criterion would be part of a skilled searcher's diligent search." *E.g., Ironburg Inventions Ltd. v. Valve Corp.*, No. C17-1182-TSZ, 2024 WL 2091177, at \*4–6 (W.D. Wash. May 3, 2024) (in the context of IPR Estoppel) (cleaned up); *accord Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-cv-00410-EMC, 2019 WL 7589209, at \*8 (N.D. Cal. Dec. 30, 2019). This case is no exception—it involves extensive expert testimony on patent subject matter classification, search tools, search strings, and Boolean searches. *See Columbia Insurance Co. v. Simpson Strong-Tie Company Inc.*, No. 19-cv-04683-TSH, 2025 WL 1635677, at \*13–16 (N.D. Cal. June 9, 2025) (describing expert testimony on PGR Estoppel).

Further, *Innovative Memory Sys., Inc. v. Micron Tech., Inc.*, cited to by Simpson, supports the conclusion that the PGR Estoppel issue could lead to juror confusion. Mot. at 11:8–18; *see Innovative*, 2022 WL 4548644, at \*5 ("Sending that question [of whether the IPR petitioner reasonably could have raised the ground during the IPR] to the jury would be contrary to one of the purposes of IPR estoppel, which is to streamline litigation, not to further complicate already

16

complicated trials by sending questions about the reasonableness of prior art searches to the jury."); *see also Valve Corp.*, 2024 WL 2091177, at *6 n.9 (citing *Innovative* with approval). Plaintiffs are correct that the *Innovative* court held that there was no factual dispute on summary judgment regarding estoppel. Opp. at 10:10–14. But the court's reasoning—that decisions on factual disputes underlying IPR Estoppel are matters for the court because they would complicate trial for jurors—bolsters the conclusion that factual disputes underlying PGR Estoppel, which are properly resolved in a bench trial, would needlessly complicate a jury trial. *Innovative*, 2022 WL 4548644, at *5.

Accordingly, the Court finds that this factor weighs in favor of bifurcation.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Simpson's Motion To Bifurcate.

**IT IS SO ORDERED.**

Dated: August 21, 2025

THOMAS S. HIXSON
United States Magistrate Judge

17